## Case No. 15,242.

UNITED STATES v. The GOVERNOR CUSHMAN.

[See Case No. 5,646.]

---

## Case No. 15,243.

UNITED STATES v. The GRACE MEADE.

[2 Hughes, 83;[1] 22 Int. Rev. Rec. 91.]

District Court, E. D. Virginia. March 13. 1876.

SHIPPING REGULATIONS — CHANGE OF NAME — IDENTITY OF VESSEL—REBUILDING.

1. It is the policy of the admiralty law to discourage changes in the names of vessels.

2. Admiralty courts, therefore, will go very far in ruling that rebuilt vessels are in law identical with those from the material of which they are built, and in requiring them to be registered in the same names.

3. Where any substantial portion of the frame or skeleton of an old vessel is built upon and preserved intact, in constructing the new, the courts lean towards holding the vessel to be the same in law.

4. But where no such part of the frame or skeleton is left intact, but each timber of the old vessel is first dislocated before being used in the new, in such case the vessel is a new one, and may bear a new name, though having the model of the old vessel.

[Cited in Hartupee v. Coal Bluff No. 2, Case No. 6,172.]

In admiralty. Libel for forfeiture.

HUGHES, District Judge. The United States brings this libel, demanding forfeiture of the steam tug Grace Meade, for an alleged change of name, under the act of congress ap-

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

proved May 5, 1864, passed "for the prevention and punishment of frauds in relation to the names of vessels." 13 Stat. 63, 64, Rev. St. § 4179, p. 811. A vessel of the same model, and partly of the same material, called the Agnes, had been blown up on the James river, a few miles above City Point, on September 10th, 1872; and the Grace Meade was completed and registered in August, 1874. The officers of the government erroneously supposed that the Agnes had been towed from the James river to Baltimore, and there rebuilt.

The facts were substantially as follows: The steam tug Agnes was built at Bordentown, New Jersey, in 1870 and 1871. She was brought to Richmond late in 1871, and was there sold to Mrs. Grace G. Lawrence, as her separate property. Captain Milton S. Lawrence, husband of the purchaser, became her master. While in charge of a tow, in September, 1872, a few miles above City Point, in James river, her boiler exploded, killing five men and sinking the vessel, which was considerably blown to pieces. Her sides were blown away; large openings were blown into both sides of her hull; the boiler was ruined; the engine much damaged; the hull broken into halves; the deck blown off, from the engine-room to the bow; most of the timbers of the vessel much shattered; all the ribs destroyed except three or four; the stern-post too much injured for reuse, and the wreck generally a very bad one. The vessel was first raised about October 1st, 1872, between two canal-boats, and was then drifted to the flats above City Point. The object at the time was, to take out of her such material as could be reused, and such machinery as could be removed. All of the machinery was got out except the shaft, the engine-frame, and the wheel, which could not be removed. The vessel was then left lying on the flats until May, 1873. Then a railway was made and sunk, and the wreck was lightened and lifted upon the railway by means of chains suspended between two barges. The model of the Agnes having been a very fine one, and that vessel very swift, it was the desire of Captain Lawrence to build a new vessel on the same model. For this purpose all the old timbers which could be found were gathered up, and these, as well as those already in the vessel, were tacked and battened together, so as to obtain in outline the model of the Agnes as nearly as practicable. The new vessel was built to the outline thus secured, moulds being taken from the old timbers for new ones, and once in a while the old timber used in the new vessel where it was sound and unshattered. During the construction of the new vessel, the old shaft, wheel, and engine-frame, which the wreckers had, in the fall before, been unable to remove, were left as they had been in the Agnes, and the new boat was built to them in their old relative position. In short, the model and general plan of the Agnes were studiously adopted and followed in building the Grace Meade, and the bulky machinery left,

as just stated, in its old positions. Other parts of the old vessel were used as follows: The old stem was used, but was changed by deepening the rabbet for thicker planking. A new scarf was cut in it, and its upper part cut off and a new arch scarfed on it. A new keel was put in, and scarfed to the stem, and the stern-post was set into a piece of the old keel six or eight feet long, and the new keel scarfed to that. Three new kelsons were put in—the Agnes had but one. The frame of the Agnes had been one-half of chestnut and one-half of white oak; of these timbers only such few of the white oak ones as had not been shattered by the explosion were used. The planking was all new, except a third of the garboard streak on the starboard side. Of the eight old beams only two were used in the Grace Meade. Of the deck, only a small part of the floor of the after cabin was made of the old timber. Of the sixty old stanchions only three were reused. The old waist was not used. Of the logging around the stem only half of the old was reused. The old transom was first used and then discarded. The old Samson post, forward, was used, and the old bits. All the old timbers that were put into the new vessel made up an aggregate of some 1,200 feet; the whole number of feet of timber used in the new vessel being upward of 30,000.

The new vessel was completed at City Point, in the summer of 1874; and Captain Lawrence brought her to Norfolk and applied to the collector of customs here for registration as the Grace Meade, in August. It seems that while the Agnes was in the James river trade, Mr. Currie had been her agent in Richmond down to the time of her sinking by the explosion of September, 1872. It seems also that while the new vessel was in process of construction at City Point, Mr. Currie applied to the collector of customs at Richmond for the registration of the new vessel in the name of the Grace Meade. The collector had written for instructions to the secretary of the treasury, stating in his letters that the Agnes had been towed to Baltimore and there rebuilt. Upon this statement, the secretary had declined to allow the registration in the new name, as without authority of law. The motive of Captain Lawrence in desiring the name Grace Meade to be given the vessel was, that that had been the maiden name of his wife, who, greatly shocked by the disaster that had befallen the Agnes, had soon after died. There was no claim against the Agnes of any sort, and it is not pretended that there was any motive inducing Captain Lawrence to desire the name Grace Meade to be given his vessel except the one which has been mentioned. There is no charge or suspicion of fraud. When Captain Lawrence applied, in August, 1874, at Norfolk, for the registration of the vessel, the special agent of the treasury here, Mr. Ira Ayer, Jr., instituted an inquiry into the facts of the explosion of the Agnes, the building of the Grace Meade, and

the attempt which had been made a year before at Richmond for registering the vessel in the new name. The result of the inquiry was to convince the officers here that the vessel could lawfully be registered as the Grace Meade, and papers were accordingly given her, dated August 4th, 1874. This libel was brought February 20th, 1875; and I am to decide. upon the case as presented, whether the vessel is forfeitable under the act of congress of May 5th, 1864.

1. In point of fact it cannot be pretended that the Grace Meade is the same vessel as the Agnes. True, the model is the same; but one egg may fit in the mould. of another without being the same egg. True, one-twentieth or one-thirtieth of the timber of the Agnes was used in constructing the Grace Meade; but it would be idle to pretend that in point of fact, the use of so small a portion of the material of one vessel made the new one the same as the old. The fact of the machinery being in great part the same in the two vessels, has no bearing upon the question of identity; it having never been pretended that the successive use of machinery by two vessels identified the vessels themselves as the same.

2. The real inquiry is, whether in point of law the Grace Meade is a new vessel, or the old vessel Agnes rebuilt. The policy of the maritime law, for reasons so obvious that they need not be stated, is very strongly to discourage a change of the names of vessels. Accordingly, it is held that a vessel, which in the course of time has undergone repairs to such an extent that her old material may have entirely disappeared and been replaced by other material, is still in law the same vessel. And generally, it may be held as a principie, that, where the keel, stem, and stern-posts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton. the case is one of an old vessel rebuilt, and not of a new vessel. Indeed, without regard to the particular parts reused, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon. the law holds that in such a case it is the old vessel rebuilt, and not a new vessel. But where no piece of the timber of an old vessel is used without being first dislocated and then replaced, where no set of timbers are left together intact in their original positions, but all the timbers are severally taken out, refitted, and then reset, there we have a very different case. That is a case of a vessel rebuilt. There it is of little consequence how much of the old timber is reused. If none of the old timber is left undisturbed, if all of the timber used, whether old or new. is taken up, refitted, and reset. as was the case in rebuilding the Grace Meade. then I think the case is presented of a vessel built anew, and not of an old vessel rebuilt.

I think it is clear from the evidence that not one piece of the Agnes was used in the construction of the Grace Meade. without having been first taken up, and handled, before being placed in its present position. No part of the frame of the Agnes, not even the smallest. was used as a frame in the Grace Meade. I am clear, therefore, in the opinion that the Grace Meade was a new vessel, and not identical with the Agnes in the legal sense of the identity of vessels.

3. I think. moreover, that where the proper officers of the United States, after a full investigation of the facts of the building of a vessel, and where there is no fraud or concealment on the part of the owner, conclude that a vessel may be registered in a given name, a court of admiralty ought not to look with favor upon a libel for the confiscation of that vessel for bearing the name in which the government itself registered her.

I will sign a decree dismissing the libel at the costs of the United States.