**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHIPBUILDERS COUNCIL OF AMERICA,
INCORPORATED; CROWLEY MARITIME
CORPORATION; OVERSEAS
SHIPHOLDING GROUP, INCORPORATED,
*Plaintiffs-Appellees,*

v.

UNITED STATES COAST GUARD;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; NATIONAL
VESSEL DOCUMENTATION CENTER,

*Defendants-Appellants,*

SEABULK PETROLEUM TRANSPORT,
INCORPORATED; SEABULK ENERGY
TRANSPORT, INCORPORATED,

*Intervenors/Defendants-Appellants,*

and

US SHIPPING PARTNERS LLP,

*Intervenor/Defendant,*

No. 08-1546

MATSON NAVIGATION COMPANY,
INCORPORATED,

*Amicus Supporting Appellants.*

SHIPBUILDERS COUNCIL OF AMERICA, INCORPORATED; CROWLEY MARITIME CORPORATION; OVERSEAS SHIPHOLDING GROUP, INCORPORATED,
                *Plaintiffs-Appellees,*

v.

UNITED STATES COAST GUARD; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; NATIONAL VESSEL DOCUMENTATION CENTER,
                *Defendants-Appellants,*

SEABULK PETROLEUM TRANSPORT, INCORPORATED; SEABULK ENERGY TRANSPORT, INCORPORATED,
*Intervenors/Defendants-Appellants,*

and

US SHIPPING PARTNERS LLP,
                *Intervenor/Defendant,*

MATSON NAVIGATION COMPANY, INCORPORATED,
        *Amicus Supporting Appellants.*

No. 08-1702

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:07-cv-00665-LMB-TRJ)

Argued: May 15, 2009

Decided: August 21, 2009

Before MOTZ, KING and DUNCAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Monika L. Moore, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Michael Joseph, BLANK & ROME, LLP, Washington, D.C., for Appellants. William D. Dolan, III, VENABLE, LLP, Vienna, Virginia, for Appellees. **ON BRIEF:** Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellants United States Coast Guard, United States Department of Homeland Security, and National Vessel Documentation Center. Alex Blanton, BLANK & ROME, LLP, Washington, D.C., for Appellants Seabulk Petroleum Transport, Incorporated and Seabulk Energy Transport, Incorporated. Marc J. Fink, Anne E. Mickey, Robert Magovern, SHER & BLACKWELL, LLP, Washington, D.C., for Appellee Shipbuilders Council of America, Incorporated; Michael W. Robinson, John F. Cooney, VENABLE, LLP, Vienna, Virginia, for Appellee Crowley Maritime Corporation; Bernard J. DiMuro, DIMUROGINSBURG, PC, Alexandria, Virginia, for Appellee Overseas Shipholding Group, Incorporated. Gene C. Schaerr, Constantine G. Papavizas, Andrew C. Nichols, WINSTON & STRAWN, LLP, Washington, D.C., for Amicus Supporting Appellants.

## OPINION

DUNCAN, Circuit Judge:

The United States Coast Guard appeals the district court's rejection of its interpretation of the regulatory scheme governing the issuance of coastwise endorsements to vessels. Inter-

venors Seabulk Energy Transport, Inc. and Seabulk Petroleum Transport, Inc. (collectively "Seabulk") also appeal. We find that we have jurisdiction under the collateral order doctrine over the district court's ruling on the issue appealed by the Coast Guard because it would bind the agency on remand. On the merits, we hold that the district court erred in rejecting the Coast Guard's interpretation of its own regulations. We further find that the district court erred in ordering Seabulk to provide security during the course of these proceedings. The judgment of the district court is therefore reversed and the case remanded for further proceedings.

I.

In its role as the federal agency with the power to administer the vessel documentation laws, the United States Coast Guard regulates the issuance of certifications to vessels that participate in nautical trade between points in the United States, also known as coastwise trade. This responsibility includes overseeing a network of intersecting federal statutes that govern vessel specifications and safety and that also seek to protect the economic interests of U.S. shipyards. The earliest statute on point, the Jones Act, was enacted in 1920 and restricts the coastwise trade to vessels built in the United States and owned by U.S. citizens. 46 U.S.C. § 55102 (formerly at 46 U.S.C. app. § 883). In 1956 and 1960, Congress passed and then amended the Second Proviso to the Jones Act, which was intended to shore up the Act's protections for U.S. shipyards. Pub. L. No. 84-714, 70 Stat. 544 (1956) (Second Proviso) (currently codified as amended at 46 U.S.C. § 12132(b) and 46 U.S.C. § 12101(a)); Pub. L. No. 86-583, 74 Stat. 321 (1960) (amendment). The Jones Act and its Second Proviso govern the Coast Guard's issuance of certifications that license vessels for coastwise trade ("coastwise endorsements").

In addition to these general statutory provisions, the Oil Pollution Act of 1990 ("OPA 90") provides that all oil tankers

in the coastwise trade must be equipped with double hulls by a specified date. 46 U.S.C. § 3703a(a). Absent a double hull, vessels are not eligible to operate in United States waters. 46 U.S.C. § 3703a(a)(2). Among the vessels that needed to be brought into compliance with the requirements of OPA 90 was the *Seabulk Trader* ("the *Trader*"), a tanker owned by Seabulk and used exclusively in the coastwise trade. In order to conform to OPA 90, the *Trader* needed a double hull installed, and Seabulk sought to conduct the work on the hull in China. However, under federal law, in order to maintain a coastwise endorsement a vessel must not be "rebuilt outside the United States." 46 U.S.C. § 12132; 46 U.S.C. § 12101. Pursuant to Coast Guard regulations, 46 C.F.R. § 67.177(g), Seabulk submitted a request to the agency for a preliminary determination of whether the work it proposed to undertake on the *Trader* would constitute a foreign rebuilding and therefore disqualify the vessel from maintaining its coastwise endorsement. Seabulk also requested a determination of whether proposed alterations to the vessel's ballast tanks would violate the Port and Tanker Safety Act of 1978, 46 U.S.C. § 3704. Based upon the information Seabulk provided, the Coast Guard issued a preliminary determination that the work would not constitute a foreign rebuilding or a prohibited foreign installation of required ballast tanks.

Following that issuance, the *Trader* did undergo work in China, which consisted of the construction of an "internal hull" that would provide the vessel with a full double hull and reconfiguration of the vessel's ballast tank system. In total, the work constituted 8.15% of the *Trader*'s pre-modification steelweight. J.A. at 233. After completion of the work, Seabulk applied for and was granted a coastwise endorsement for the *Trader*. J.A. at 30.

In considering whether the *Trader* could maintain its coastwise endorsement following the work on its hull, the Coast Guard applied the federal regulation created to implement the Second Proviso, 46 C.F.R. § 67.177. The regulation sets out

a comprehensive scheme for determining whether work done in a foreign shipyard constitutes a foreign rebuilding. Work can constitute a foreign rebuild if it consists of either: (1) the addition of a major component to a vessel's hull (the "major component test"); or (2) the construction of a considerable part of the hull (the "considerable part test").

In applying the regulation, the Coast Guard determined which test applied to the work done on the *Trader* by assessing whether the added steel composed a separable component before its addition, in which case it would be assessed under the major component test, or was not a discrete separable component, in which case it would be assessed under the considerable part test. This parsing between separable and inseparable additions ("the separable/inseparable distinction") was therefore integral to the agency's interpretation of both the major component and the considerable part tests.

The Coast Guard concluded that while the work on the *Trader*'s hull brought it under the auspices of the Jones Act, the construction did not qualify as a foreign rebuild under the applicable administrative regulations. Ruling that the installation of the inner hull on the *Trader* did not consist of the addition of a separable component, the Coast Guard assessed the installation of the inner hull under the considerable part test. Because the added portions of the hull did not exceed the 10% threshold of added steelweight set forth in the administrative regulation, 46 C.F.R. § 67.177(b), the Coast Guard determined that the *Trader* had not been rebuilt foreign and therefore could be issued a coastwise endorsement.

Appellees, the Shipbuilders Council of America ("Shipbuilders"), brought suit in the district court to challenge the Coast Guard's issuance of a coastwise endorsement to the *Trader*. Shipbuilders contended that the tanker was no longer eligible to operate in the coastwise trade because the work done in the Chinese shipyards: (1) constituted a foreign rebuild of the ship in violation of the Second Proviso of the

Jones Act, 46 U.S.C. § 12132(b); and (2) included a foreign installation of segregated ballast tanks in violation of the Port and Tanker Safety Act of 1978, 46 U.S.C. § 3704. Seabulk, as the owner of the *Trader*, intervened in the district court action.

In the district court, Shipbuilders challenged the Coast Guard's grant of the coastwise endorsement as arbitrary and capricious, an abuse of discretion, and contrary to law under the Administrative Procedure Act. 5 U.S.C. § 706. The Coast Guard claimed that the district court had no jurisdiction over the Jones Act claim because the language of the statute was so broad as to preclude meaningful judicial review. The district court disagreed, finding that the language of the Jones Act did not preclude the court's review. The district court then addressed the two determinations by the Coast Guard: (1) that the *Trader* was not rebuilt foreign; and (2) that it did not improperly have segregated ballast tanks installed in a foreign shipyard.

The district court declined to give deference to the Coast Guard's stated rationale for not applying the major component test to the work on the *Trader*, finding that deference was not warranted because: (1) the analysis employed by the agency was not grounded in the language of the statute; and (2) the regulation merely restated the language of the statute and thus the Coast Guard could not claim the greater deference usually given to an agency interpreting its own regulations. Finding that the Coast Guard's interpretation of the major component portion of the regulation was not persuasive, the district court struck it down.

The district court did defer to the agency's interpretation of the considerable part test. However, it found the Coast Guard's application of its interpretation to the *Trader* to be arbitrary and capricious. The district court determined that the agency did not provide an adequate explanation for its finding that the *Trader* was not rebuilt foreign under the considerable

part test. The steelweight of the work performed meant that whether the *Trader* was rebuilt foreign was a question left to agency discretion, 46 C.F.R. § 67.177(b)(2), but the agency provided no reasons for its ultimate conclusion.

The district court also considered the third question of whether the agency's ruling on the installation of the *Trader*'s segregated ballast tanks should be upheld. Again declining to defer to the agency, the district court concluded that the agency's interpretation of the statute was inconsistent with the plain language of the statute. However, that holding was not dispositive, because the court also concluded that there was insufficient evidence in the record concerning the actual work on the *Trader* to allow for a determination of whether the Coast Guard's issuance of a coastwise endorsement could be upheld. All three questions were therefore remanded back to the agency for further proceedings.

In addition, the district court instructed the Coast Guard on remand to revoke the *Trader*'s coastwise endorsement, citing a lack of support for issuance of the endorsement in the record. J.A. at 255. The revocation was based upon the district court's legal conclusions concerning the agency's application of the major component and considerable part tests, which are necessary predicates to any analysis of the record.

Before conducting any further proceedings, the Coast Guard appealed to this court. Seabulk, which had intervened in the case below, also filed a notice of appeal.

## II.

The initial question in this case concerns the scope of our jurisdiction on appeal. Under federal law, an appellate court may only review a "final order" of a lower court. 28 U.S.C. § 1291. However, the collateral order doctrine recognizes an exception to § 1291's final order limitation for certain decisions of the district court that: "(i) conclusively determine the

disputed question; (ii) resolve an important issue completely separate from the merits of the action; and (iii) [are] effectively unreviewable on appeal from a final judgment." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375 (1987) (quotations omitted). The circuits that have considered the question have uniformly held that a decision of a district court remanding a case to an agency for further consideration does not qualify as an appealable collateral order. *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 329-30 (D.C. Cir. 1989) (collecting cases). However, most circuits have also made an exception to this blanket rule when it is the federal agency itself that brings an appeal. Courts permit the agency to appeal because the agency is bound on remand by the standard articulated by the district court and so would not have a chance to appeal from any further judgment, making the district court's determination effectively unreviewable by the agency on remand. *Id.* at 330 (collecting cases).

This circuit has followed suit, reviewing collateral orders that remand cases to agencies "if a district court order remanding a case to an administrative agency will be effectively unreviewable after a resolution of the merits." *W. Va. Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 244 (4th Cir. 2003) (quoting *Hanauer v. Reich*, 82 F.3d 1304, 1306-07 (4th Cir. 1996)); *Colvin v. Sullivan*, 939 F.2d 153, 155 (4th Cir. 1991) ("The district court's remand order was a final judgment, allowing appeal under 28 U.S.C. § 1291."). Where a district court order would be effectively unreviewable by an agency on remand, "the order is a final decision" for purposes of § 1291. *Norton*, 343 F.3d at 244.

An agency's appeal of a district court's decision makes that decision "final" for the purposes of § 1291 and permits a reviewing court to properly exercise its jurisdiction over the matter. In this case, Seabulk seeks to bring a broader challenge to the district court's decisions, arguing that in addition to the court's holding on the major component test, we should review: (1) the considerable part determination; (2) and the

segregated ballast tank determination. The Coast Guard specifically does not challenge the district court's rulings on those points, having determined that such issues will be addressed on remand to the agency. Appellant's Br. at 8 n.3. We find that review of those issues, not raised by the agency or related to the agency's appeal, exceeds the scope of our jurisdiction under the collateral order doctrine.

Seabulk also raises a challenge to the revocation order issued by the district court. Seabulk's Br. at 3. This challenge falls outside the limited scope of the agency's appeal in this case. The Coast Guard appeals only the district court's ruling that the agency improperly applied the "major component" test in determining that the Trader was not rebuilt foreign. *See* Appellant's Br. at 3. The Coast Guard did not include the revocation order in its Statement of the Issues on appeal, Appellant's Br. at 3, and therefore the agency has not properly raised this issue before us.

We need not reach the question of whether such an order could be appealed by a party other than the agency, because the order itself is not final and therefore not properly subject to review under the collateral order doctrine. Our precedent indicates that, when the agency appeals, our jurisdiction encompasses the district court's determinations that are both binding on the agency and would be essentially unreviewable in a later court proceeding. *Norton*, 343 F.3d at 243-44 (holding that where the district court ruled on a decision of the agency made as "the exercise, by delegation, of the [agency's] power," the entire decision was within the circuit court's jurisdiction upon appeal by the agency). The revocation order is premised upon the district court's finding that the agency had not provided sufficient reasons to support its issuance of a coastwise endorsement.[1] Because the agency remains free to

---

[1]We note that the district court's revocation order was predicated upon its now-reversed holding on the major component test. The district court may therefore wish to reconsider that aspect of its order on remand, particularly in light of the language of 46 CFR § 67.173.

evaluate the *Trader*'s eligibility on remand using the correct legal standard, the revocation order is not final and therefore cannot be reviewed under § 1291.

### III.

Under U.S. law, a vessel becomes ineligible for a coastwise endorsement, and therefore ineligible to participate in the coastwise trade, if significant work is performed on the vessel in a foreign shipyard. The statute requires that when a ship is rebuilt, "the entire rebuilding, including the construction of any major component of the hull or superstructure, [be] done in the United States." 46 U.S.C. § 12101. Construction that violates this provision invalidates the vessel's eligibility for a coastwise endorsement because the vessel is no longer deemed to have been built in the United States. *See* 46 U.S.C. § 12112(a).

Administrative regulations implementing the Jones Act state that a vessel is "rebuilt foreign" when "any considerable part of its hull . . . is built upon or substantially altered outside of the United States." 46 C.F.R. § 67.177. This is assessed under two tests set forth in the regulation. The "major component" test qualifies a vessel as rebuilt foreign if "a major component of the hull or superstructure not built in the United States is added to the vessel." 46 C.F.R. § 67.177(a). The "considerable part" test qualifies a vessel as rebuilt foreign if the work performed abroad "constitutes more than 10 percent of the vessel's . . . discounted lightship weight." 46 C.F.R. § 67.177(b)(1). A vessel may, but need not, be deemed rebuilt foreign by the agency if the work constitutes between 7.5 and 10% of the discounted lightship weight. 46 C.F.R. § 67.177(b)(2).

In its analysis, the Coast Guard ruled that the work done on the *Trader* should not be evaluated under the major component test because the installation of the steel to form the inner hull did not constitute a separable major component of the

ship. Analyzing the work under the considerable part provision of its regulation, the agency found that the *Trader* was not rebuilt foreign under 46 U.S.C. § 12101 and was thus entitled to retain its coastwise endorsement. The district court, in assessing the Coast Guard's determination, accorded the agency's interpretation of the implementing regulation only *Skidmore* deference. This standard gives "respect" to an agency determination where the form and content of the ruling gives it "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Finding the reasoning unpersuasive, the district court declined to uphold the agency's interpretation as a permissible construction of the regulations implementing the Jones Act. Because we find that the district court erred in its application of the *Skidmore* standard, we reverse its holding on this point.

### A.

For purposes of our review, when agency action is at issue, "we generally review the agency's action from the same position as that of the district court." *Fisherman's Dock Co-op, Inc. v. Brown*, 75 F.3d 164, 168 (4th Cir. 1996). In this case, we therefore apply the Administrative Procedure Act ("APA") "and seek to determine, as did the district court, whether on the administrative record the agency action was" in violation of the APA's provisions. *Id.*

The district court found that the Coast Guard's interpretation of the "major component" provision, holding that it applied only to separable components, was offered only in informal opinion letters. Because the district court held that the separable/inseparable distinction was not present in either the statutory language or the administrative regulations, it accorded only *Skidmore* deference to the agency's interpretation. J.A. at 240-41. Under the *Skidmore* standard, the court defers to an agency interpretation only if and to the extent that it is persuasive. *Skidmore*, 323 U.S. at 140. The district court found that the Coast Guard's interpretation had "no founda-

tion in [the] statute or regulation," J.A. at 242, nor in the legislative history or purpose, J.A. at 243-44, and it therefore declined to find the agency's construction persuasive. Instead, the district court invalidated the Coast Guard's determination under the major component test and remanded the issue to the agency. J.A. at 245.

On appeal the Coast Guard argues that its determination that the work on the *Trader* did not fall under the major component provision of the administrative regulations is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, where a statute is "silent or ambiguous with respect to the specific issue," reviewing courts defer to the administering agency's interpretation so long as it "is based on a permissible construction of the statute." *Id.* at 843. The agency bases this argument on the delegation provisions contained within the Jones Act and the Vessel Documentation Act. Appellant's Br. at 28 (citing Pub. L. No. 84-714, 1956 U.S.C.C.A.N. 622; Pub. L. No. 96-594, 94 Stat. 3453 (1980)). Therefore, the Coast Guard argues that its regulations interpreting the language of the Jones Act and its determinations pursuant to those regulations should be upheld unless they are found to be unreasonable. Appellant's Br. at 31. The agency contends that its interpretation of a "major component" as one that is built separate from the vessel not only more closely aligns with the legislative history of the Jones Act, but also preserves the integrity of the considerable part test, which would otherwise be conflated with the major component analysis. *Id.* at 31-38. Shipbuilders contends that the agency's definition of a major component was post hoc, offered only for litigation purposes, and therefore not entitled to deference. Appellee's Br. at 25.

In the alternative, the Coast Guard argues that its interpretation of the regulation is entitled to deference under the standard established in *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Under *Auer* deference,[2] an agency's interpretation of

---

[2]This type of review of agency action is also sometimes referred to as *Seminole Rock* deference. Both terms denote the same level of deference and are applied in precisely the same circumstances.

its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *accord Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945) ("[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."); *see Christensen*, 529 U.S. at 587-88 (explaining that *Chevron* deference applies to an agency's interpretation of a statute while *Auer* deference applies to "an agency's interpretation of its own regulation"); *see also United States v. Deaton*, 322 F.3d 698, 708-09 (4th Cir. 2003) (applying *Chevron* deference to the agency's construction of the statute in question and *Auer* deference to its interpretation of the regulation issued pursuant to that statute); *cf. Humanoids Group v. Rogan*, 375 F.3d 301, 306 (4th Cir. 2004) ("[A]gency interpretations that lack the force of law (such as those embodied in opinion letters and policy statements) do not warrant *Chevron*-style deference when they interpret ambiguous statutes but do receive deference under *Auer* when interpreting ambiguous regulations." (quoting *Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 212 F.3d 1301, 1304 (D.C. Cir. 2000))).

The district court declined to give *Auer* deference to the agency's interpretation because it found that the language of the Coast Guard regulation that established the "major component" test constituted a "parroting regulation." The Supreme Court established in *Gonzales v. Oregon*, 546 U.S. 243 (2006), that when a regulation merely "parrots" the language of the statute it implements, it does not reflect "the considerable experience and expertise the [agency has] acquired over time with respect to the complexities of the" statutory scheme and is not entitled to *Auer* deference. *Id.* at 256; *see also id.* at 257 (holding that when "the underlying regulation does little more than restate the terms of the statute itself," the government is not entitled to *Auer* deference because of "the near equivalence of the statute and regulation").

In this case, because we find that the district court erred in its application of the *Skidmore* standard, we need not reach the question of whether the major component language of the regulation merely parrots the language of the Jones Act. *See, e.g.*, *Fed. Express. Corp. v. Holowecki*, 128 S. Ct. 1147, 1156 (2008) (declining to decide whether *Auer* or *Chevron* deference applies to an agency's "construction of the statutory term" where the agency's interpretation is persuasive even absent such deference); *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 79 (2nd Cir. 2009) (same). We turn now to our analysis of the district court's application of *Skidmore*.

B.

Under the regulation, *any* "vessel is deemed rebuilt foreign when . . . a major component of the hull or superstructure not built in the United States is added to the vessel." 46 C.F.R. § 67.177(a). The major component test therefore applies to all ships, regardless of their material of construction, when "a major component" is added to the hull. For ships constructed of steel or aluminum, as the *Trader* is, there is a second test in the regulation. The "considerable part" test qualifies a vessel as rebuilt foreign if the work performed abroad "constitutes more than 10 percent of the vessel's . . . discounted lightship weight." 46 C.F.R. § 67.177(b)(1). The agency has discretion to determine whether a vessel has been rebuilt foreign where the work constitutes between 7.5 and 10% of the discounted lightship weight. 46 C.F.R. § 67.177(b)(2).

The Coast Guard argues that the major component test and the considerable part test apply in different circumstances. Under the agency's reading, the addition of a major component, which component is not built in the United States, automatically results in the revocation of a ship's coastwise endorsement. A major component, in turn, is defined by the agency as any "new, separate and completely-constructed unit" weighing more than 1.5% of the vessel's steelweight. Appellant's Br. at 32. Any other work—any work, that is, that

does not involve the addition of a separable major component not built in the United States—is assessed under the considerable part test. Appellant's Br. at 25-26. Because the inner hull of the *Trader* was installed piece by piece and therefore was not a "new, separate and completely-constructed unit," the Coast Guard evaluated it under the considerable part test.

Shipbuilders moved for summary judgment in the district court, arguing that the Coast Guard's interpretation of the regulation was invalid. The district court evaluated the major component and the considerable part tests separately, and invalidated the Coast Guard's interpretation of each. On appeal, we review the district court's grant of summary judgment de novo. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007).

The district court evaluated the agency's proffered interpretation and found that it was not persuasive because it relied on the distinction between separable and inseparable parts to define the work that would be assessed under the major component test. Concluding that the question of whether an added part is a separable component had no basis in the statutory text or legislative history and that the Coast Guard's interpretation would lead to arbitrary application of the regulations, the district court held that the agency had not properly interpreted the major component test.

In its appeal, the Coast Guard persuasively argues that the separable/inseparable distinction is a necessary part of its holistic interpretation of the regulation. Only by drawing a firm line between work that is to be assessed under the major component test and work that is to be evaluated using the considerable part test, the agency contends, can both prongs of the regulation be given effect.

The considerable part test was first articulated in regulations promulgated the year following the Jones Act's Second Proviso. *See* 22 Fed. Reg. 6380, 6381 (1957) ("A vessel may

be deemed to have been rebuilt if any considerable part of the hull in its intact condition . . . is built upon or substantially altered."); *Am. Haw. Cruises*, 713 F. Supp. at 462-63 (noting that the use of the "considerable part" standard to interpret "rebuilt" has its origins in the decision in *The Grace Mead*, 25 F. Cas. 1387 (E.D. Va. 1876)). The considerable part test therefore predates the major component test; the latter was added to the regulation following a 1960 Congressional amendment of the Jones Act. *See* H. R. Rep. No. 86-1887 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2664, 2664-66 (citing the need to close "a loophole" in the Jones Act's protectionist provisions that excerpted from coverage as rebuilt work where "vessel hull or superstructure sections [were] constructed abroad" but installed in U.S. shipyards); 25 Fed. Reg. 13687, 13687-88 (1960) (amending the regulation so that, in addition to the considerable part test, found in 19 C.F.R. § 3.28(a), it contains in 19 C.F.R. § 3.28(b) language that also makes "the addition or change in any major component of the hull or superstructure . . . not constructed in the United States" a prohibited rebuilding). The two provisions therefore function together to create the regulatory scheme that Congress intended to enforce the Second Proviso to the Jones Act.

In its brief and at oral argument, Shipbuilders contends that a proper interpretation of the regulation would bring *all* work exceeding 1.5% of the vessel's steelweight under the major component test. Appellee's Br. at 38-39. Under this interpretation, separable and inseparable components would be assessed identically and a "major component" would include any work on the vessel in excess of minimal maintenance.

The difficulty with the interpretation that Shipbuilders advances is that it eviscerates the considerable part test. In interpreting statutes and regulations, we have a duty, where possible, "to give effect" to all operative portions of the enacted language, including its "every clause and word." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotations omitted); *accord Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citing "the

rule against superfluities," which holds that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quotations omitted); *see also Zheng v. Holder*, 562 F.3d 647, 654 (4th Cir. 2009) (deferring to an agency's "reasonable interpretation" of statutes and regulations where the petitioner's proposed alternative would render provisions "superfluous"); *U.S. ex rel Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 295 (4th Cir. 2008) (citing *Duncan*). In assessing the Coast Guard's interpretation, we therefore note that its interpretive scheme has the great virtue of construing each provision of the regulation to have functional significance.[3]

The district court placed a great deal of emphasis on the fact that the separable/inseparable distinction is not found in the text of either the regulation or the statute. However, this does not deprive the interpretation of its persuasive power in instances where the language of the regulation is ambiguous. *See Barnhart v. Walton*, 535 U.S. 212, 221 (2002) ("[T]he fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise its due."). In this case, the language of the regulation does not, in itself, provide clear guidance on how to determine in a given instance whether the major component test or the considerable part test should be applied. However, the Coast Guard is the interpretive body best positioned to take account of the myriad factors involved in arriving at a reasonable construction of the complex regulatory scheme for coastwise endorsements; and its interpretation offers a way to harmonize the regulation so that each provi-

---

[3]Because the statute of limitations for such an action has passed, no facial challenge to the language of the regulation itself can be raised. *See* 28 U.S.C. § 2401(a) (imposing a six-year statute of limitation on claims against the United States). This gives added heft to the mandate that a valid interpretation must not make superfluous either test but embrace both portions of the regulation as written.

sion has independent significance. *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) ("*Skidmore* . . . hold[s] that an agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency . . . and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") (citations and quotations omitted).

Nevertheless, the agency does not have unfettered interpretive license. Some indicia of reliability and reasonableness must exist in order for us to defer to the agency's interpretation. *See Am. Haw. Cruises*, 713 F. Supp. at 466 (listing such indicia as whether "the administrative determination was made contemporaneously with the statute, is longstanding, and has been applied consistently") (citations and quotations omitted). The Coast Guard argues that its analysis in this case meets this requirement, citing the legislative history of the Jones Act and longstanding agency practice. Appellant's Br. at 33.

We agree. The agency's interpretation offers a holistic vision of the regulation that gives effect to each of its provisions, and Coast Guard's interpretation comports with the plain language of the regulatory and statutory schemes. The interpretation is longstanding, has been consistently applied in the same manner, and comports with the congressional intent of the governing statute. *See* J.A. at 150, 159, 183-85, 202 (Coast Guard opinion letters articulating a similar vision of the major component test); *Am. Haw. Cruises*, 713 F. Supp. at 462-64 (reviewing the legislative history of the Second Proviso and finding that Congress purposefully left the interpretation of the term "rebuilt" to the administering agency). Therefore, we find that the district court erred in failing to defer to the agency's persuasive interpretation of the major component test.

IV.

In order to allow Seabulk to continue to employ the *Trader* in the coastwise trade during the pendency of this appeal, the district court stayed its order pending appeal. In so doing, it required that Seabulk "provide an undertaking to pay to [Shipbuilders] 12.5% of the net revenue realized from the *Seabulk Trader*'s operations in coastwise trade" if the judgment was affirmed on appeal. Seabulk moved in this court to have the security requirement invalidated, and we held over consideration of that motion until the resolution of the case. As part of the disposition of this case, we hereby release Seabulk from any such undertaking with regard to Shipbuilders.

V.

For the foregoing reasons, the judgment of the district court invalidating the Coast Guard's interpretation of the major component test of 46 C.F.R. § 67.177 is reversed. The district court order instructing Seabulk to provide an undertaking to pay Shipbuilders is also reversed. The case is remanded to the district court, with instructions to modify its remand order as discussed and to remand to the agency for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*