**GOVERNMENT OF THE VIRGIN ISLANDS and PUBLIC EMPLOYEES RELATIONS BOARD, Appellants/Respondents**

**v.**

**CLIFFORD CROOKE, Appellee/Petitioner**

S. Ct. Civ. No. 2007-0109

Supreme Court of the Virgin Islands

August 24, 2010

238

239

■ ■ ■

■

MATTHEW C. PHELAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellant Government of the Virgin Islands.*

LORIN M. KLEEGER, ESQ., Public Employees Relations Board, St. Croix, USVI, *Attorney for Appellant Public Employees Relations Board.*

PEDRO K. WILLIAMS, ESQ., Law Offices of Pedro K. Williams, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 24, 2010)

HODGE, C.J. Appellants Department of Planning and Natural Resources (hereafter "DPNR") and the Public Employees Relations Board (hereafter "PERB") (collectively "Appellants") request that this Court reverse the Superior Court's August 22, 2007 Order granting a petition for writ of review filed by Appellee Clifford Crooke (hereafter "Crooke") and affirm PERB's July 26, 2001 Order dismissing Crooke's appeal of his termination by DPNR for lack of jurisdiction. For the reasons that follow we will affirm the Superior Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 1997, the Governor of the Virgin Islands signed a "Notice of Personnel Action" (hereafter "NOPA") transferring Crooke — who was previously employed as the Assistant Commissioner for the Department of Housing, Parks, and Recreation — to DPNR, where he would serve as a Pesticides Administrator effective March 10, 1997. Although Crooke's NOPA identified the Pesticides Administrator job as an "exempt" position, on April 6, 1999 Crooke wrote a letter requesting that the Director of Personnel (hereafter "Director") reclassify him as a "classified" employee pursuant to the statute formerly codified as 3 V.I.C.

§ 498.[1] However, the Director did not acknowledge Crooke's letter until August 30, 2000 — three months after the Legislature had repealed section 498 — when the Director requested that Crooke submit additional materials due to the lapse of time.

While Crooke's request to change his status from "exempt" to "classified" remained pending, Hollis Griffin (hereafter "Griffin"), who had recently been appointed as DPNR's Director of Environmental Protection, recommended on July 13, 1999 to Dean C. Plaskett (hereafter "Plaskett"), the Commissioner of the DPNR, that Crooke be immediately terminated for poor performance. On July 16, 1999, Plaskett recommended that the Governor terminate Crooke; however, the Governor did not act on Plaskett's request. On March 10, 2000, Griffin, noting that the Governor had not terminated Crooke, recommended that Plaskett demote Crooke to Environmental Assessor — a position which paid a lower salary — and terminate Crooke if he refused to accept the new position. Plaskett notified Crooke of his reassignment to the Environmental Assessor position on March 28, 2000, and informed Crooke that failure to accept the position would result in termination. Crooke declined the transfer on April 12, 2000, and on April 28, 2000, Plaskett placed Crooke on leave without pay. In a May 8, 2000 letter to the Governor, the Chief Negotiator for the Office of Collective Bargaining recommended Crooke's termination even though Crooke had made a timely request to place himself in the classified service on April 6, 1999 because "the reasons articulated by the DPNR constitute justifiable reasons for termination, and the termination should be upheld by the PERB." (DPNR App. at 39.) Crooke received a termination letter on May 12, 2001, which had been signed by the Governor on March 14, 2001 and had an effective termination date of April 28, 2000.

Crooke filed an appeal of his termination with PERB pursuant to 3 V.I.C. § 530 on May 16, 2001. PERB held a hearing on Crooke's appeal which began on June 5, 2001 and was continued to June 29, 2001. While the hearing was continued, DPNR filed a motion to dismiss Crooke's appeal on June 13, 2001, which contended that PERB lacked jurisdiction to review Crooke's termination. During the proceedings before PERB, Crooke, who appeared *pro se,* never introduced the April 6, 1999, May 8,

---

[1] This statute was repealed on May 19, 2000. *See* Act No. 6348, 2000 V.I. Sess. Laws 22.

2000, and August 30, 2000 letters into evidence, but testified that he had made a timely written election into the classified service and that these documents were part of PERB's case file in another appeal. On July 26, 2001, PERB entered an order dismissing Crooke's appeal for lack of jurisdiction because it found that Crooke did not meet the requirements for being a "regular" employee pursuant to 3 V.I.C. § 451, even though he was a "classified" employee pursuant to 3 V.I.C. § 521, because he was not hired pursuant to the procedures outlined in 5 V.I.C. § 522 *et seq.* In the same order, PERB also held that Crooke had failed to elect into the classified service pursuant to the former section 498 because "[a]lthough he testified that he made an election, he made no written election" because "[n]either the DOP nor DPNR personnel file contain any evidence of a written election and [Crooke] provided none." (App. at 206.)

On August 29, 2001, Crooke, now represented by counsel, filed a petition for writ of review of PERB's dismissal order with the Superior Court. In his petition, Crooke claimed that his petition for writ of review was timely even though it had been filed more than thirty days after PERB's July 26, 2001 Order because he did not receive the order until August 1, 2001, when he visited PERB's office to inquire as to the status of his appeal. During the Superior Court proceedings, neither PERB nor DPNR challenged the timeliness of Crooke's petition nor contended that Crooke had notice of the July 26, 2001 Order prior to August 1, 2001.

■ After both parties submitted briefs and attended several status conferences, the Superior Court, in a December 21, 2004 Order, mandated that Crooke supplement the record by submitting a signed copy of his Acknowledgement of Condition and Employment or, if such a document was never executed, to explain how its absence impacts Crooke's election to "classified" status. On January 20, 2005, Crooke notified the Superior Court that he could not locate an executed Acknowledgement of Condition and Employment, but supplemented the record with the May 8, 2000 and August 30, 2000 letters and contended that the absence of an executed Acknowledgement of Condition and Employment did not affect his election to the "classified" service. The Superior Court, in an August 22, 2007 Opinion and Order, granted Crooke's petition for writ of review on the basis that PERB did have jurisdiction over Crooke's appeal because Crooke was both a "classified" and a "regular" employee, and remanded the matter to PERB for a full hearing on the merits. DPNR and

PERB timely filed[2] their respective notices of appeal on September 21, 2007 and October 12, 2007.[3]

## II. DISCUSSION

### A. This Court Has Jurisdiction Over the Instant Appeal

■ Prior to considering the merits of an appeal, this Court must first determine if it has jurisdiction over the matter. *V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't*, 50 V.I. 276, 279 (V.I. 2008). Although all three parties contend in their briefs that this Court possesses jurisdiction to review the Superior Court's August 22, 2007 Opinion and Order as a final judgment appealable pursuant to 4 V.I.C. § 32,[4] it is well established that "remands to administrative agencies are not ordinarily appealable" as a final judgment on the merits. *United Steelworkers of America, Local 1913 v. Union Railroad Co.*, 648 F.2d 905, 909 (3d Cir. 1981). *See also Matter of Alison*, 837 F.2d 619, 622 (3d Cir. 1988) (holding that litigant may not appeal intermediate appellate court's order remanding matter to trial court because intermediate court's order was not a final decision); *Enrietto v. Rogers Townsend & Thomas P.C.*, 49 V.I. 311, 315 (V.I. 2007)

---

[2] "[T]he notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from; but if the Government of the Virgin Islands or an officer or agency thereof is a party, the notice of appeal may be filed . . . within sixty days after such entry." V.I.S.CT.R. 5(a)(1).

[3] Neither the certified docket entries in this matter, nor the appendices submitted by the parties, indicate that PERB filed a traditional notice of appeal in this matter with the Superior Court. Significantly, DPNR's September 21, 2007 notice of appeal only stated that "[n]otice is hereby given that the Government of the Virgin Islands, Department of Planning and Natural Resources . . . hereby appeals to the Supreme Court of the Virgin Islands," with no mention that PERB was also joining in the appeal. Rather, it appears that counsel for PERB filed a notice of appearance in this matter with this Court on October 12, 2007, with PERB and DPNR then filing a joint civil appeal information sheet and submitting separate briefs pursuant to the briefing schedule. However, because PERB's intent to appeal is clear and PERB effectuated that intent prior to the expiration of time to appeal, and since Crooke has failed to challenge the sufficiency or form of PERB's notice of appeal, any such challenge has been waived. *See* V.I.S.CT.R. 4(c) ("An appeal shall not be dismissed solely for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice. . . ."). *See also Archer v. Caribbean Auto Mart, Inc.*, 379 Fed. Appx. 157, 159 (3d Cir. 2010) (holding that opposing party's failure to comply with appellate court's mandatory claims-processing rules is waived if not timely asserted).

[4] "The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a).

(summarizing the final judgment rule). Accordingly, because the Superior Court's August 22, 2007 Opinion and Order, by its own terms, remands the matter to PERB for a hearing on the merits, it cannot constitute a final judgment appealable as of right to this Court pursuant to section 32.

Nevertheless, this Court may arguably possess jurisdiction over the instant appeal pursuant to the present 3 V.I.C. § 530a(d) and the collateral order doctrine. For the reasons that follow, we conclude that we do not have jurisdiction pursuant to section 530a(d), but may reach the merits under the collateral order doctrine.

### 1. 3 V.I.C. § 530a(d) Does Not Vest This Court with Jurisdiction Over the Instant Appeal

Section 530a(a) of chapter 25 of title 3 of the Virgin Islands Code provides, in pertinent part, that "[a]ny party aggrieved by any final order of the PERB issued under section 530 or 531 of this chapter, may appeal to the Superior Court of the Virgin Islands." Moreover, section 530a(d) states, in full, that "[t]he District Court of the Virgin Islands shall have appellate jurisdiction of any decision of the Superior Court made pursuant to this chapter, unless otherwise provided by law." Thus, the plain text of this statute provides strong support for the proposition that the Legislature intended to allow litigants to appeal, as of right, any decision the Superior Court entered pursuant to section 530a(a), regardless of whether it would constitute a final order. However, it is not readily apparent that this statute, as written, would authorize PERB and DPNR to appeal the Superior Court's August 22, 2007 Opinion and Order to this Court, for section 530a(d) expressly states that litigants may appeal orders made pursuant to chapter 25 of title 3 to the *District* Court.

 It is well established that "the powers of courts of local or special jurisdiction are restricted to the subject matter or territory designated by statute," and that "when jurisdiction is once granted it will not be deemed to have been taken away by similar jurisdiction grant to another tribunal unless the statute is repealed." 3A SUTHERLAND STATUTORY CONSTRUCTION § 67:3 (6th ed. 2003) (collecting cases). Prior to establishment of the Supreme Court, appellate jurisdiction over the Superior Court was vested in the District Court pursuant to § 23A of the Revised Organic Act of 1954, codified as 48 U.S.C. § 1613a (hereafter "ROA"). Section 23A(d) of the ROA discusses the impact the Supreme

Court's creation shall have on the District Court's exercise of appellate jurisdiction:

> Upon the establishment of the appellate court provided for in section 21(a) of this Act all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court.

48 U.S.C. § 1613a(d). Therefore, although the Legislature never passed legislation formally replacing all references to "District Court" with "Supreme Court" in the context of appellate jurisdiction, section 23A(d) of the ROA, which takes precedence over local statutes, requires that all appeals from the Superior Court, not previously taken, otherwise authorized by law be filed with the Supreme Court. Accordingly, based on traditional principles of statutory construction[5] and the effect of section 23A(d), we conclude that section 530a(d) allows this Court to consider an appeal of any Superior Court decision entered pursuant to chapter 25 of title 3, even if it is not otherwise a final judgment.

██ However, section 530a(d) does not authorize appeals of any Superior Court decisions that pertain to orders entered by PERB, but only provides for an immediate appeal of "any decision of the Superior Court *made pursuant to this chapter.*" (emphasis added). Significantly, the Legislature did not enact section 530a until July 5, 2002 — almost a year after PERB had entered its July 26, 2001 Order and Crooke filed his August 29, 2001 petition for writ of review. Notably, at the time Crooke filed his petition for writ of review, chapter 25 of title 3 did not include any provision authorizing individuals aggrieved by PERB orders to file a petition for writ of review with any court. Accordingly, prior to section 530a's enactment in 2002, Virgin Islands courts consistently held that aggrieved parties could only obtain review of orders entered by PERB

---

[5] Although 4 V.I.C. § 33(a) expressly states that "[a]ppealable judgments and orders to the Supreme Court shall be available only upon the entry of final judgment in the Superior Court from which appeal or application for review is taken," it is "a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one, unless it appears that the Legislature intended for the more general to control." *PSC v. V.I. Water and Power Auth.,* 49 V.I. 478, 485 (V.I. 2008). Because 3 V.I.C. § 530a(d) covers a more specific right to appeal than the general right to appeal provided for in 4 V.I.C. § 33, it should control. *Id.*

and its predecessor, the Government Employees' Service Commission,[6] through the general writ of review statute, codified as 5 V.I.C. §§ 1421-23.[7] *Compare Samuels v. Gov't Employees' Service Comm'n,* 12 V.I. 581, 586-87 (D.V.I. 1976) ("Moreover, despite language in Section 530 that the decision of the G.E.S.C. is final, when read in conjunction with 5 V.I.C. § 1421 *et seq.* it is clear that the decision of the Commission may be reviewed by the District Court."); *Turnbull v. Holder,* 11 V.I. 93, 98 (D.V.I. 1974) ("[T]his Court unquestionably has power to review the Commission's decisions. The grant of that power is to be found in 5 V.I.C. § 1421 et seq."); *Donastorg v. Gov't Employees' Service Comm'n,* 285 F. Supp. 111, 6 V.I. 368, 370-71 (D.V.I. 1968) (same); *with Williams-Jackson v. PERB,* 52 V.I. 445, 449-450 (V.I. 2009) (citing 3 V.I.C. § 530a(d) as basis for this Court's jurisdiction for appeal of denial of petition for writ of review filed in 2007); *Sanders v. Gov't,* Civ. No. 05-18, 2009 U.S. Dist. LEXIS 18109, *11 (D.V.I. Mar. 9, 2009) (stating that 3 V.I.C. § 530a(a) and (d) represent the process for appealing from an adverse PERB decision).

---

[6] In 1994, the Legislature enacted Act No. 6010 to amend 3 V.I.C. § 530 to change all references to the "Government Employees Service Commission" to the "Public Employees Relations Board."

[7] These statutes provide, in full, as follows:

> Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

5 V.I.C. § 1421.

> The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, to the injury of some substantial right of the plaintiff.

5 V.I.C. § 1422.

> Upon the review provided for in this chapter the court shall have power to affirm, modify, reverse, or annul the decision or determination reviewed, and, if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision. From the judgment of the district court on review an appeal may be taken in like manner and with like effect as from a judgment of such district court in a civil action.

5 V.I.C. § 1423.

■ Here, Crooke filed his petition for writ of review almost a year prior to section 530a's enactment, and his petition expressly states that it is being brought pursuant to 5 V.I.C. §§ 1421 and 1422. (App. at 391.) Consequently, because Crooke could have only brought his petition for writ of review pursuant to the general writ of review statute rather than any provision found in chapter 25 of title 3, the Superior Court's August 22, 2007 Opinion and Order granting Crooke's petition cannot constitute a "decision of the Superior Court *made pursuant to this chapter.*" Therefore, while section 530a(d) authorizes immediate appeals of Superior Court decisions granting or denying petitions for writ of review of PERB decisions for petitions that were filed on or after July 5, 2002, the plain text of this statute does not authorize immediate appeals of decisions entered pursuant to petitions filed prior to that date that could only have been brought pursuant to the general writ of review statute. Accordingly, section 530a(d) does not vest this Court with jurisdiction over the instant appeal.

### 2. This Court Possesses Jurisdiction Pursuant to the Collateral Order Doctrine

The Appellate Division of the District Court of the Virgin Islands has held, in a series of cases, that litigants may directly appeal Superior Court orders remanding cases to administrative agencies even though such orders are not final judgments. *See, e.g., Pueblo Int'l, Inc. v. Gov't,* 327 F. Supp. 2d 533, 535, 46 V.I. 227 (D.V.I. App. Div. 2004); *Gov't ex rel. Larsen v. Ruiz,* 145 F. Supp. 2d 681, 684-85 (D.V.I. App. Div. 2000). The Appellate Division, however, expressly based these decisions on the fact that "[n]either the Congress nor the Legislature of the Virgin Islands has limited [the Appellate Division's] jurisdiction to final judgments and orders." *Pueblo,* 327 F. Supp. 2d at 535. Notably, the Appellate Division observed that section 23A of the Revised Organic Act of 1954, codified as 48 U.S.C. § 1613a, authorized the Appellate Division to assert jurisdiction over matters "preserved by local law." Because the local statute codifying the District Court's appellate jurisdiction granted it the power to review "judgments and orders of the [Superior] [C]ourt in all civil cases" without expressly limiting appellate review to *final* judgments and orders, the Appellate Division reasoned that it was not bound to follow the final judgment rule even if it had, as an exercise of its judicial discretion, declined to assert jurisdiction over non-final orders in the past. *Larsen,*

145 F. Supp. 2d at 684 (citing *Prosser v. Prosser,* 921 F. Supp. 1428, 34 V.I. 139 (D.V.I. App. Div. 1996)).

■ But these Appellate Division cases, even if correctly decided, do not apply to the instant appeal. Significantly, the Legislature has expressly limited this Court's jurisdiction so that, except for a limited number of situations that do not apply to this matter,[8] "[a]ppealable judgments and orders to the Supreme Court shall be available *only* upon the entry of *final* judgment in the Superior Court. . . ." 4 V.I.C. § 33(a) (emphases added). This Court has consistently held that statutory limits on its jurisdiction cannot be judicially modified. *See Worldwide Flight Services v. Gov't,* 51 V.I. 105, 109-110 (V.I. 2009); *Pichardo v. Comm'r of Labor,* 49 V.I. 447, 450 (V.I. 2008); *Enrietto,* 49 V.I. at 315-16. Under these circumstances, this Court, unlike the Appellate Division, may not simply exercise judicial discretion to consider appeals of non-final orders unless the appeal is otherwise authorized by law. *See* 4 V.I.C. § 32(a).[9]

■ Nevertheless, the United States Supreme Court has authorized an extremely narrow exception to the final judgment rule, in the form of the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949). "Under the collateral order doctrine, the Supreme Court recognized an exception to the final judgment rule for a small class of prejudgment orders which finally determine claims of right separable from, and collateral to, rights asserted in the action, and are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Enrietto,* 49 V.I. at 319 (internal quotations and citations omitted). "To fall within the exception, an order . . . . must conclusively determine the disputed question; . . . resolve an important issue completely separate from the merits of the

---

[8] For instance, title 4, section 33(b) authorizes interlocutory civil appeals when the Superior Court grants, modifies, continues, refuses, or dissolves an injunction, while section 33(c) grants this Court the discretion to permit an interlocutory civil appeal if the trial court judge states that "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation" and the appellant thereafter requests this Court for permission to appeal within ten days after entry of the order.

[9] For instance, had 3 V.I.C. § 530a been in effect at the time Crooke filed his petition for writ of review, section 530a(d) would have authorized PERB and DPNR to appeal the Superior Court's August 22, 2007 Opinion and Order notwithstanding the final judgment rule.

action; and . . . must be effectively unreviewable on appeal from a final judgment." *Id.* at 319 (citing *Richardson-Merrell, Inc., v. Koller,* 472 U.S. 424, 430, 105 S. Ct. 2757, 2761, 86 L. Ed. 2d 340 (1985)) (internal quotations omitted).

 Every element of the collateral order doctrine has been satisfied in this case. With respect to the first element, the Superior Court's August 22, 2007 Opinion and Order conclusively decided the disputed question of whether PERB possessed jurisdiction over Crooke's appeal. Likewise, the August 22, 2007 Opinion and Order satisfies the second element by determining the important issue of under what circumstances individuals initially hired as "exempt" employees who later attempted to elect into the "classified" service pursuant to the now-repealed 3 V.I.C. § 498 may appeal adverse employment actions to PERB.[10]

 Finally, although courts have held that litigants may generally not appeal agency remands pursuant to the collateral order doctrine because in most circumstances the trial court's decision will, at some point, become reviewable on appeal, *Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 329-30 (D.C. Cir. 1989) (collecting cases), "most circuits have also made an exception to this blanket rule when it is the . . . agency itself that brings an appeal . . . . because the agency is bound on remand by the standard articulated by the [trial] court and so would not have a chance to appeal from any further judgment, making the [trial] court's determination effectively unreviewable by the agency on remand." *Shipbuilders Council of America v. U.S. Coast Guard,* 578 F.3d 234, 239 (4th Cir. 2009) (citing *Occidental Petroleum Corp., 873 F.2d at 330*). *See*

---

[10] The dissent contends that the first and second prongs of the collateral order doctrine are not satisfied because the August 22, 2007 Opinion and Order (1) did not conclusively resolve the issue of jurisdiction and (2) the jurisdictional issue is not separate from the merits of Crooke's claim, However, the August 22, 2007 Opinion and Order did not direct that PERB consider any aspect of the jurisdictional question on remand, but expressly held that PERB possessed jurisdiction, that PERB's prior holding that it lacked jurisdiction was erroneous, and ordered PERB to consider the merits of Crooke's appeal on remand. Moreover, courts have consistently held that, when the disputed question is a jurisdictional issue, the first prong is satisfied because questions relating to jurisdiction are "separate from the merits" of the underlying case. *Gov't of the V.I. v. Hodge,* 359 F.3d 312, 321, 45 V.I. 738 (3d Cir. 2004) (collecting cases). Finally, there is no indication that holding that PERB possesses jurisdiction over Crooke's appeal would require PERB, on remand, to rule in Crooke's favor on the merits of his claim, for the issue of whether Crooke was a regular employee has no bearing on the unrelated issue of whether DPNR was justified to terminate Crooke's employment notwithstanding his classified status.

*United States v. Alcon Laboratories,* 636 F.2d 876, 884-85 (1st Cir. 1981); *Director, Office of Workers' Compensation Programs v. Brodka,* 643 F.2d 159, 161-63 (3d Cir. 1981), *Cohen v. Perales,* 412 F.2d 44, 48 (5th Cir. 1969); *Stone v. Heckler,* 722 F.2d 464, 467 (9th Cir. 1983); *Bender v. Clark,* 744 F.2d 1424, 1428 (10th Cir. 1984); *Huie v. Bowen,* 788 F.2d 698, 703 (11th Cir. 1986). Here, both issues raised in PERB's appeal relate to the Superior Court's authority to order PERB to consider Crooke's appeal of his termination on the merits, and, because PERB would be unable to file a petition for writ of review of its own order in the event neither Crooke nor DPNR challenge the result of the merits hearing,[11] are effectively unreviewable if this Court dismisses PERB's appeal.[12] Consequently, this Court exercises jurisdiction over the instant appeal pursuant to the collateral order doctrine.

## B. The Superior Court Had Jurisdiction Over Crooke's Petition for Writ of Review

██ As their first issue on appeal, both DPNR and PERB contend that the Superior Court lacked jurisdiction over Crooke's August 29, 2001

---

[11] The dissent, citing the legislative history for 3 V.I.C. § 530a, correctly notes that section 530a(a) — which, while not applicable to Crooke's August 29, 2001 petition for writ of review, would apply to any order entered by PERB after remand — allows PERB to participate in any proceeding in which a party seeks Superior Court review of a PERB decision. However, both the plain text of section 530a, as well as the legislative history relied upon by the dissent, clearly only provide for a party in the PERB proceeding — as opposed to PERB itself — to file a petition for writ of review of a PERB order. In other words, while PERB has a right to be heard in the Superior Court pursuant to section 530a if either Crooke or DPNR file a subsequent petition for writ of review, neither section 530a nor any other provision of law authorizes PERB — in the event neither Crooke nor DPNR seek further review — to independently appeal the Superior Court's August 22, 2007 Opinion and Order. Accordingly, the Superior Court's August 22, 2007 Opinion and Order is effectively unreviewable with respect to PERB.

[12] We note that both PERB and DPNR have appealed the Superior Court's August 22, 2007 Opinion and Order. However, DPNR's appellate brief in this matter asserts the same issues as PERB's appellate brief, and DPNR does not otherwise urge this Court to review any issues beyond those identified by PERB. Under these circumstances, this Court may consider the arguments in DPNR's appellate brief even if it is unclear whether DPNR would have been authorized to appeal the August 22, 2007 Opinion and Order in the absence of PERB as its co-appellant. *See Shipbuilders Council of America,* 578 F.3d at 240 (dismissing co-appellant shipbuilders' organization's appeal with respect to issues not also raised by co-appellant agency, but considering both co-appellants' arguments with respect to issues that had been raised by agency).

petition for writ of review because Crooke did not file his petition "within 30 days after the date of [PERB's] Final Order" as required by 3 V.I.C. § 530a, and thus, pursuant to this Court's prior precedents, the Superior Court could not have exercised jurisdiction over the petition regardless of the reasons for Crooke's untimely filing. *See Pichardo,* 49 V.I. at 450 ("When the time to appeal or seek review is established by statute, timeliness is a jurisdictional issue, therefore a petition filed out of time deprives the court of jurisdiction to entertain the appeal.") (citing *Bowles v. Russell,* 551 U.S. 205, 127 S. Ct. 2360, 2366, 168 L. Ed. 2d 96 (2007)). However, as noted previously, section 530a was not adopted until July 5, 2002 — almost a year after Crooke initiated his action for a petition for writ of review — and that statute contains no indication that the Legislature intended it to apply retroactively to petitions for writ of review filed before its enactment date. Accordingly, section 530a's requirement that a litigant seeking judicial review of a PERB decision file a petition for writ of review within thirty days is inapplicable to Crooke's petition.

Because no statute authorized a specific method for obtaining review of a PERB decision at the time PERB entered its order dismissing Crooke's appeal, the Superior Court had jurisdiction to consider Crooke's petition for writ of review pursuant to the general writ of review statute and Superior Court Rule 15(a). *See Worldwide Flight Services,* 51 V.I. at 109, n.1 ("Title 5, section 1421 et seq. of the Virgin Islands Code authorizes writs of review pursuant to Superior Court Rule 15(a) in cases where 'there is no appeal or other plain, speedy, and adequate remedy.' ") (quoting 5 V.I.C. § 1422); *Pichardo v. Benjamin,* S. Ct. Civ. No. 2007-0061, 2008 V.I. Supreme LEXIS 25, *7 (V.I. Apr. 16, 2008), *aff'd as Pichardo v. V.I. Comm'r of Labor,* 613 F.3d 87, 99, 53 V.I. 936 (3d Cir. 2010) (explaining that 5 V.I.C. §§ 1421-23 "is a general writ of review statute and is only applicable in the absence of another remedy."). However, Superior Court Rule 15(a) also provides that petitions for writ of review filed pursuant to the general writ of review statute "shall be filed within 30 days after the date of the decision or determination complained of." Consequently, pursuant to the plain text of Rule 15(a), it appears that Crooke's August 29, 2001 petition, which sought review of a PERB order dated July 26, 2001, remains untimely.

It is well established that time limits set exclusively by court rules are mere claims-processing rules which do not affect a court's subject-matter

jurisdiction even if they may result in dismissal if violated. *See Bowles,* 551 U.S. at 210-11 (citing *Kontrick v. Ryan,* 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)). Significantly, a court possesses the discretion to relax time requirements mandated by a claims-processing rule, but lacks authority to grant an extension of time or leave to file out of time when the rule is jurisdictional. *Id.* at 211-12. Because the general writ of review statute provides that "[a]ny party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter *and rules of court*," 5 V.I.C. § 1421 (emphasis added), this Court has held that the statute incorporates Superior Court Rule 15(a) by reference. *Bryan v. Ponce,* 51 V.I. 239, 247 (V.I. 2009). However, neither this Court, nor apparently any other court, has considered whether a statute which incorporates a claim-processing rule by reference renders the time limitation in the court rule jurisdictional with respect to actions brought pursuant to that statute.

 Nevertheless, it is not necessary for this Court to resolve this question in this particular case because the Superior Court could have considered Crooke's petition for writ of review regardless of whether Superior Court Rule 15(a)'s thirty-day filing period remains a claims-processing rule or becomes jurisdictional in the context of a petition arising pursuant to section 1421. To the extent Rule 15(a) remains a claims-processing rule, the failure of both DPNR and PERB to challenge Crooke's compliance with Rule 15(a) in the Superior Court renders any objection to the purported deficiencies in Crooke's petition waived. *See Archer v. Caribbean Auto Mart, Inc.,* 379 Fed. Appx. 157, 159 (3d Cir. May 11, 2010) (holding that opposing party's failure to comply with mandatory claims-processing rule, like the statute of limitations and other affirmative defenses, is waived if not timely asserted). Moreover, section 1421 does not solely invoke Rule 15, but all "rules of court." Thus, section 1421 not only incorporates Superior Court Rule 15, but Superior Court Rule 10, which provides that "[w]hen an act is required or allowed to be done at or within a specified time . . . [t]he court for cause shown may at any time in its discretion . . . permit the act to be done after the expiration of the period if the failure to act was the result of excusable neglect." SUPER. CT. R. 10(a)(2). Therefore, even if the reference to "rules of court" in section 1421 were to render the thirty-day limitation period found in Rule 15(a) jurisdictional, the Legislature, by incorporating all

Superior Court rules, has provided a mechanism through which the Superior Court may exercise discretion to hear an untimely petition and avoid the "inequitable" result in *Bowles.*

Here, Crooke's petition for writ of review explained why the petition was untimely filed,[13] and neither DPNR nor PERB challenged the factual basis for the untimely filing or otherwise sought dismissal of the action. Moreover, the Superior Court's August 22, 2007 Opinion recognized that more than thirty days had elapsed between the date of PERB's decision and the filing of Crooke's petition for writ of review,[14] yet the Superior Court nevertheless considered the merits of Crooke's petition. Under these circumstances, the Superior Court could not have erred in considering Crooke's petition even if section 1421's reference to "rules of court" transformed Rule 15(a) into a jurisdictional requirement because the uncontested facts surrounding the untimely filing would have required an extension pursuant to Rule 10(a)(2). Consequently, the Superior Court did not err in failing to *sua sponte* dismiss Crooke's action.

## C. The Superior Court Did Not Err In Finding that PERB Possessed Jurisdiction

Finally, both DPNR and PERB contend that the Superior Court erred in holding that PERB possessed jurisdiction over Crooke's appeal. Specifically, DPNR and PERB both argue that the Superior Court applied the wrong legal standard when it reviewed PERB's July 26, 2001 Order and improperly considered evidence that Crooke could have presented to PERB during the June 5, 2001 and June 26, 2001 hearings yet failed to do so.

### 1. The Superior Court Correctly Rejected PERB's Interpretation of Sections 451, 498, and 521

Ordinarily, this Court's review of application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of*

---

[13] Crooke's petition for writ of review stated that "Petitioner received a copy of the PERB's decision when he visited the PERB's office on St. Croix, on or about August 1, 2001, when he went to inquire about the status of his case. Petitioner has not received a copy of the decision through the regular mail." (J.A. at 392.)

[14] The August 22, 2007 Opinion noted that "[b]y Decision and Order dated July 26, 2001, PERB dismissed Petitioner's appeal for lack of jurisdiction," and that "[t]he instant 'action for writ of review' was filed on August 29, 2001." (DPNR App. at 8.)

*Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). However, when reviewing an administrative agency's decision, neither party disputes that "we review questions of fact to ascertain whether the [agency]'s factual determinations are supported by 'substantial evidence in the record considered as a whole.'" *Williams-Jackson v. PERB*, 52 V.I. 445, 449-450 (V.I. 2009) (quoting 3 V.I.C. § 530a(b)). Substantial evidence is such " 'evidence that a reasonable mind would accept as adequate to support an agency's conclusion.'" *Id.* (quoting *Lockhart v. Matthew*, 203 F. Supp. 2d 403, 412-13 (D.V.I. 2002)).

▇▇▇ While the parties do not dispute the applicable standard for reviewing PERB's factual findings, they strongly disagree as to the applicable standard of review for an administrative agency's construction of a statute that is within its jurisdiction to administer and interpret. Although DPNR and PERB argue that both the Superior Court and this Court should defer to PERB's "unique expertise," Crooke contends that "[i]n interpreting a statute a reviewing court is not bound by the findings of fact or decision of an administrative agency, nor must it give deference to an administrative agency." (Appellee's Br. at 13.) The United States Supreme Court, however, has expressly held that, even with respect to statutory construction — a question of law — a reviewing court must "defer to an agency's construction, even if it differs from what the court believes to be the best interpretation," but only "if the particular statute is within the agency's jurisdiction to administer, the statute is ambiguous on the point at issue, and the agency's construction is reasonable." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 969, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Since there is no dispute that the statutes pertinent to this appeal — sections 451 and 521 as well as the former section 498 — are within PERB's jurisdiction to administer, this Court, to determine the standard of review the Superior Court should have employed when reviewing PERB's legal conclusions, must determine whether those statutes are ambiguous.

▇▇▇ We conclude that none of the statutes PERB interpreted in its July 26, 2001 Order are ambiguous. Section 451 states that the term " 'regular employee' means an employee who has been appointed to a position in the classified service in accordance with this chapter after completing his working test period." Section 521 expressly states that the merit selection

procedure outlined in sections 522 *et seq.* represents the method through which one is hired into the classified service "except as otherwise specified in this chapter." Section 498, which had been included in the same chapter as section 521 prior to its repeal, provided that "[a]ny executive branch employee in an unclassified or temporary position who has been employed by the Government as an unclassified or temporary employee for at least two consecutive years and who satisfies the minimum qualifications for the permanent position may elect to become a member of the classified service," and that "[a]n unclassified or temporary employee who elects to become a member of the classified service shall have all rights and privileges of a classified employee without prejudice due to such election." Accordingly, because none of these statutes contain any ambiguous language that would require granting deference to PERB, both this Court and the Superior Court review PERB's interpretation of those statutes under a *de novo* standard of review.

Under a *de novo* standard of review, PERB clearly misinterpreted section 451 when it held that employees who entered the classified service pursuant to an election under the former section 498 are not regular employees, since the former section 498 not only established a method to join the classified service without going through the procedures outlined in section 522 *et seq.,* but expressly mandated that individuals who elect to become classified pursuant to that provision would not be prejudiced by that election and "have all rights and privileges of a classified employee," including the right to appeal a termination to PERB. Therefore, the Superior Court did not err when it employed a *de novo* standard of review and rejected PERB's interpretation of these statutes.

### 2. Appellants Waived Any Challenge to the Superior Court's Decision to Admit New Evidence

PERB and DPNR further contend that, even if the Superior Court could reject PERB's construction of sections 451, 498, and 521, it could not have concluded that PERB had jurisdiction over Crooke's appeal even under its interpretation of those statutes because it incorrectly applied the substantial evidence standard of review to PERB's factual findings. Specifically, PERB and DPNR argue that the Superior Court improperly considered the May 8, 2000 and August 30, 2000 letters Crooke submitted with his January 20, 2005 response to the Superior Court's December 21,

2004 Order. According to PERB and DPNR, the Superior Court lacked authority to consider these materials because the substantial evidence standard of review requires the Superior Court to review PERB's factual findings based solely on the evidence in the administrative record, and thus the Superior Court could not use the letters as a basis for overturning PERB's factual finding that Crooke never made a timely election pursuant to the former section 498.

 "In one of this Court's earliest opinions we pointed out that '[a]ppellate courts generally refuse to consider issues that are raised for the first time on appeal.' " *Madir v. Daniel,* 53 V.I. 623, 634-635 (V.I. 2010) (quoting *Daniel,* 49 V.I. at 335). *See also Ruiz v. Jung,* S. Ct. Civ. No. 2008-0035, 2009 V.I. Supreme LEXIS 43, *11 (V.I. Oct. 19, 2009) ("Importantly, it is a 'well-established rule that absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.' ") (quoting *Patterson v. Cuyler,* 729 F.2d 925, 929 (3d Cir. 1984)); *Myers v. Derr,* 50 V.I. 282, 288-89 (V.I. 2008) ("Nothing in the record indicates that Myers ever requested that the trial court calculate damages representing injury to the land by any method other than the diminished value rule . . . Accordingly, Myers is barred from raising th[is] argument[] for the first time on appeal."); *Spencer v. Navarro,* S. Ct. Civ. No. 2007-0069, 2008 V.I. Supreme LEXIS 18, *5 (V.I. June 27, 2008) ("There is no indication on the record that any evidence of collateral recovery was ever presented to the trial court or that the trial judge considered collateral recovery in making his determination, and we will not consider the issue for the first time on appeal.") (citing *Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir. 1976)); *V.I. Port Auth. v. Joseph,* 49 V.I. 424, 428 (V.I. 2008) (" 'It is well established that failure to raise an issue in the [trial] court constitutes a waiver of the argument' on appeal.") (quoting *Gass v. V.I. Tel. Corp.,* 311 F.3d 237, 246, 45 V.I. 649 (3d Cir. 2002)). "This refusal stems from the fact that, while the Federal Rules of Criminal Procedure permit review of certain plain errors even though they were not raised in the trial court . . . there is no corresponding rule permitting such review in the civil context." Thus, in *Daniel* we ruled that " 'absent exceptional circumstances, an issue not raised in the [trial] court will not be heard on appeal.' " *Madir,* 2010 V.I. Supreme LEXIS 23, at *23 (quoting *Daniel,* 49 V.I. at 335). "While such exceptional circumstances may exist 'where the error is so serious and flagrant that it goes to the very integrity of the

258

trial,' . . . even then our review is for plain error, and our decision of whether to review is discretionary." *Id.* (quoting *Fashauer v. N.J. Transit Rail Operations, Inc.,* 57 F.3d 1269, 1289 (3d Cir. 1995)).

In this case, it appears that both PERB and DPNR are challenging the Superior Court's consideration of the May 8, 2000 and August 30, 2000 letters for the first time on appeal. Although this Court's Rules of Appellate Procedure mandate that the statement of the issues in appellant's brief "shall include a designation by reference to specific pages of the appendix or place in the proceedings at which each issue on appeal was raised, objected to, and ruled upon," V.I.S.Ct.R. 22(a)(3), neither PERB nor DPNR, in their respective briefs, make any reference to either party objecting to the Superior Court's December 20, 2004 Order, filing an opposition to Crooke's January 20, 2005 submission, or otherwise notifying the Superior Court that its consideration of Crooke's supplemental materials was improper. Moreover, this Court, in its independent review of each appendix and the Superior Court's certified docket sheets, has also failed to recognize any filing that could be construed as a specific objection to admission of the May 20, 2000 and August 30, 2000 letters or a general objection to the Superior Court's consideration of evidence outside of PERB's record. Notably, although the Superior Court's December 20, 2004 Order required *all* the parties to submit briefs on the issue of whether the absence of an executed Acknowledgement of Condition and Employment rendered Crooke's election to the classified service ineffective, the Superior Court's certified docket entries do not indicate that DPNR or PERB either submitted a brief or responded to Crooke's brief, even though Crooke's brief argued that the May 8, 2000 and August 30, 2000 letters were sufficient to demonstrate that he had timely elected to the classified service notwithstanding the absence of an executed Acknowledgement of Condition and Employment. Accordingly, DPNR and PERB have clearly failed to preserve their challenge to the Superior Court's consideration of the May 8, 2000 and August 30, 2000 letters.

■■■ Finally, we decline to exercise our discretion to review DPNR and PERB's unpreserved error. Even if this Court were to assume, without deciding, that the Superior Court's consideration of the May 8, 2000 and

August 30, 2000 letters constituted error,[15] DPNR and PERB have failed to even allege any extraordinary circumstances that would warrant suspension of traditional procedural rules, let alone meet their burden of demonstrating that the Superior Court committed an error that is "so serious and flagrant that it goes to the very integrity of the trial." *Madir,* 2010 V.I. Supreme LEXIS 23, at *23. Significantly, PERB and DPNR do not dispute the Superior Court's finding that the May 8, 2000 and August 30, 2000 letters are "crucial" to the issue of whether Crooke made an election to the classified service pursuant to the former section 498. Accordingly, because failure to review the unpreserved error — if any — would not result in a manifest injustice or otherwise undermine the integrity of the Superior Court proceedings, this Court affirms the Superior Court's August 22, 2007 Opinion and Order.

## III. CONCLUSION

Although the Superior Court's August 22, 2007 Opinion and Order does not constitute an appealable final judgment, this Court has jurisdiction over the instant appeal pursuant to the collateral order doctrine. Moreover, because Crooke brought his petition for writ of review pursuant to the general writ of review statute and neither DPNR nor PERB moved to dismiss Crooke's petition or dispute Crooke's claim that PERB did not serve him with the July 26, 2001 Order until August 1, 2001, Crooke's petition was properly before the Superior Court regardless of whether Superior Court Rule 15(a)'s thirty-day limitations period constitutes a mandatory claims-processing rule or a jurisdictional

---

[15] Although PERB and DPNR both contend that the May 8, 2000 and August 30, 2000 letters were not part of the administrative record, it is not readily apparent from the administrative record that PERB did not have access to these materials and did not consider them when it dismissed Crooke's appeal. The transcript of the June 29, 2001 PERB hearing indicates that Crooke, in response to the hearing officer's observation that his personnel file did not contain any documents regarding a section 498 election, told the hearing officer that those documents "can be found in PERB's file," that he "ha[d] filed that letter with PERB in the past," and that it was part of PERB's case file in his other case before PERB. (App. at 382.) While the hearing officer responded to Crooke's claim that it was in his other case file with "Okay," (App. at 382), PERB's July 26, 2001 Order is silent as to (1) whether PERB made any attempt to retrieve those documents from the other case file; (2) if such an attempt was made, whether the documents were actually in the other case file; and (3) if those documents had been filed and retrieved, whether PERB considered those documents when it held that Crooke had made no written election into the classified service.

rule. Finally, the Superior Court correctly applied the *de novo* standard of review to reject PERB's interpretation of sections 451, 498, and 521 and instead conclude that employees who elected into classified status pursuant to section 498 were hired in accordance with chapter 25 of title 3 of the Virgin Islands Code. Consequently, because DPNR and PERB have not preserved their challenge to the Superior Court's decision to consider the May 8, 2000 and August 30, 2000 letters, we affirm the Superior Court.

SWAN, *Associate Justice*, dissenting. The Government of the Virgin Islands ("Appellant" or "Government") terminated Clifford Crooke ("Crooke" or "Appellee") from his position as pesticides administrator in the Department of Planning and Natural Resources ("DPNR"). Crooke appealed his termination to the Public Employees Relations Board ("PERB"). Citing lack of jurisdiction, the PERB dismissed Crooke's appeal. Thereafter, Crooke filed a petition for a writ of review in the Superior Court of the Virgin Islands ("Superior Court"), seeking judicial review of the PERB's dismissal order. The Superior Court opined that the PERB had overlooked critical facts when it erroneously held that it lacked jurisdiction over Crooke's appeal. Therefore, in its August 21, 2007 Memorandum Opinion and separate Order of the same date, the Superior Court remanded the case to the PERB for "a full hearing on the merits of Petitioner[ Crooke's] appeal." (App. at 14, 222.) Appellants, the Government and the PERB, filed a timely joint appeal of the Superior Court's order. For the reasons elucidated below, I would dismiss this appeal because this Court lacks jurisdiction to review this non-final order of the Superior Court, which remands this case to the PERB for a full hearing on the merits of Appellee's claims.

## I. FACTS AND PROCEDURAL HISTORY

Initially, Crooke held the position of assistant commissioner in the Department of Housing, Parks and Recreation ("DHPR"), an agency of the Government of the Virgin Islands. Indisputably, the position of assistant commissioner is an unclassified or exempt position, from which

Crooke could be terminated at will.[1] Subsequently, Crooke was transferred to the position of pesticides administrator with DPNR. In the Notice of Personnel Action ("NOPA")[2] confirming Crooke's employment as pesticides administrator at DPNR, the Government designated his position as "exempt,"[3] although the PERB determined that it was a classified position. However, Crooke was unaware of the PERB's designation of his position as classified. Subsequently, Crooke was terminated from the position of pesticides administrator.

At the time of Crooke's classification, the law provided a procedure for certain employees holding exempt positions to be reclassified as regular employees.[4] The terms "regular employee" and "classified employee" are synonymous;[5] therefore, I use the terms interchangeably. A regular employee who is terminated for cause may appeal the termination to the PERB pursuant to title 3, section 530 of the Virgin Islands Code.[6] Crooke

---

[1] A regular or classified employee who is dismissed, demoted, or suspended for cause may appeal to the PERB. V.I. CODE ANN. tit. 3, § 530. Conversely, an exempt or temporary employee does not have the right to an administrative appeal.

[2] Crooke's Notice of Personnel Action ("NOPA") states that the position of pesticides administrator is an exempt position, although the PERB posits that it is a position in the classified service. "It is undisputed that the position, [p]esticides [a]dministrator, was in the classified service." (Appellants' Reply Br. 4.)

[3] In this capacity, Appellant neither engaged in policy-making, nor held a confidential relationship with a policy maker, the Commissioner or the Assistant Commissioner.

[4] See 3 V.I.C. § 498, the law in effect during Crooke's employment with the PERB: "[a]ny executive branch employee in an unclassified or temporary position who has been employed by the Government as an unclassified or temporary employee for at least two consecutive years and who satisfies the minimum qualifications for the permanent position may elect to become a member of the classified service." This provision was repealed May 19, 2000. See Act No. 6348, § 1, Sess. L. 2000, p. 22; see Crooke v. V.I., 49 V.I. 46, 49 n.4 (V.I. Super. 2007).

[5] The term " 'regular employee' means an employee who has been appointed to a position in the classified service in accordance with this chapter after completing his working test period." 3 V.I.C. § 451.

[6] Title 3, section 530(a) states in pertinent part:

§ 530 Dismissals, demotions, and suspensions; procedure

(a) Notwithstanding any other provision of law . . . where a department head, of the executive branch of the Government of the Virgin Islands or the executive director or chief executive officer of any agency or instrumentality of the Government . . . decides to dismiss, demote, or suspend a regular employee of, or an employee, who is not on contract, is not temporary, and is not on probation . . . for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have ten days following the date of receipt of the statement of charges to appeal the proposed

avers that he wrote an April 6, 1999 letter to the Director of the Division of Personnel ("Director"), requesting a reclassification of his position from that of "exempt" to "regular" employee.

On May 12, 2001, Crooke was served with a March 14, 2001 letter from the Governor of the Virgin Islands, informing him of his termination with the Government. On May 16, 2001, and contending that he was a regular employee, Crooke filed an appeal with the PERB challenging his termination. In the PERB hearing, DPNR filed a Motion to Dismiss Crooke's appeal, arguing that Crooke was not a regular employee; therefore, relief under section 530 was unavailable to him. The PERB concluded that although Crooke's position was designated as classified, Crooke was neither a classified nor a regular employee. Consequently, he could not make an election to change his employment status. Therefore, the PERB dismissed Crooke's appeal on July 26, 2001, for lack of jurisdiction. (J.A. at 195.)

On August 29, 2001, Crooke filed a Petition for a Writ of Review in the Superior Court. Following a hearing on the Petition, the Superior Court considered two letters relating to Crooke's efforts to be reclassified to regular employee status. Unfortunately, the letters were not part of the administrative record generated by the PERB.[7] The Superior Court's reason for considering the letters is that they "were from Government representatives, [and] they are crucial in assessing certain issues relevant to the instant Petition . . . ." *Crooke v. V.I.,* 49 V.I. 46, 49 n.5 (V.I. Super. 2007). After concluding that Crooke, "at the time of his termination, was a regular employee having 'standing' to seek redress under § 530," the Superior Court entered its August 22, 2007 Memorandum Opinion, granting Crooke's Petition for Writ of Review and remanding the case to the PERB for a full hearing on the merits of Crooke's appeal. The Superior Court entered a separate order to enforce its Memorandum

---

action to the Public Employees Relations Board. The appeal must be in writing, and the Board must provide a copy to the department head, the agency head or the chief executive officer, as the case may be, and the Attorney General.

3 V.I.C. § 530(a).

[7] The first was a May 8, 2000 letter by the chief negotiator for the Office of Collective Bargaining which recommended Crooke's termination to the Governor of the Virgin Islands. The second was an August 30, 2000 letter in which the director of personnel responded to Crooke's April 6, 1999 letter requesting a transfer to regular classified status, by requesting more information from Crooke.

Opinion.[8] Appellants perfected a timely appeal from the Superior Court's order granting the writ of review.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court is granted jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law[]" pursuant to title 4, section 32(a) of the Virgin Islands Code. V.I. CODE ANN. tit 4, § 32(a). This Court is also granted jurisdiction over certain interlocutory orders of the Superior Court pursuant to title 4, section 33. 4 V.I.C. § 33. "Our jurisdictional analysis begins with the general rule that the Supreme Court has jurisdiction [over all appeals from final orders or judgments]." *Enrietto v. Rogers Townsend & Thomas PC,* 49 V.I. 311, 315 (V.I. 2007). A final judgment is "a decision by the [trial c]ourt that ends litigation on the merits and leaves nothing for the court to do but execute judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981) (citation and internal quotation marks omitted); *see also Mohawk Industries, Inc. v. Carpenter,* 130 S. Ct. 599, 605, 175 L. Ed. 2d 458 (2009) (observing that final decisions typically arise when "a [trial] court dissociates itself from a case.") (citation and internal quotation marks omitted).

As an appellate court, this Court possesses "both the inherent authority and a continuing obligation to assess . . . [its] jurisdiction over a case or controversy before rendering a decision on the merits." *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 211, 48 V.I. 1034 (3d Cir. 2007). This court's jurisdiction relative to an order remanding a case to the administrative agency for further proceedings is reviewed on a case by case basis. *Cf. Bender v. Clark,* 744 F.2d 1424, 1427 (10th Cir. 1984) ("practical application of [the finality order rule], however, must be viewed under the circumstances of each case.").

Appellants raise the issue that the Superior Court lacked jurisdiction because Appellee's August 29, 2001 petition for a writ of review filed in the Superior Court emanated from the PERB's July 26, 2001 decision, a

---

[8] The trial court's corresponding order granted Appellant's petition for a writ of review and also remanded the case to the PERB for proceedings consisted with the order. (*Superior Court of the Virgin Islands, Crooke v. V. I.,* 49 V.I. 46, 56, Civ. Docket at 3; Gov't. App. at 3; App. at 222.)

period of more than thirty days. Appellants argue that the petition for a writ of review was filed outside the 30-day deadlines imposed by section 530a. However, section 530a was enacted on July 5, 2002 and approximately ten months after Appellee's petition for a writ of review was filed in the Superior Court. *See* Act No. 6533, § 29, Sess. L. 2002, p. 430. Importantly, section 530a is devoid of any language, which can be construed or interpreted that the Virgin Islands Legislature ("legislature") intended or explicitly states that 530a be applied retroactively. Accordingly, section 530a is not applicable to Appellee's petition for a writ of review.

Title 4, section 33, therefore, defines the scope of this Court's jurisdiction to review this appeal. Furthermore, the statute granting this Court the power to hear interlocutory appeals is likewise found in title 4, section 33 of the Virgin Islands Code and was enacted on October 29, 2004. *See* Act No. 6687, § 2, Sess. L. 2004, p. 186. An examination of section 33(b), which defines this Court's jurisdiction to review interlocutory appeals of civil matters, reveals that this Court is statutorily precluded from reviewing this appeal because this appeal does not involve any of the limited circumstances under which interlocutory appeals to this Court are allowed.

## III. ISSUE

The pivotal issue before this Court is whether pursuant to title 4, section 32(a) of the Virgin Islands Code, or as otherwise provided by law, this Court has jurisdiction to review as a final order, a Superior Court's order remanding a case from the Superior Court to the PERB for a full hearing on the merits of the case.

## IV. DISCUSSION

The framework of my discussion is as follows. First, I discuss the final judgment rule. Second, I discuss the general rule that orders remanding cases to administrative agencies for further proceedings are not reviewable as final orders. Third, I identify each exception to the final judgment rule and discuss the applicability of the Superior Court's remand order to each exception. Fourth, I conclude that the Superior Court did not issue a final order in this case, nor a cognizable interlocutory order; therefore, this Court lacks jurisdiction to adjudicate this appeal.

## A. The Final Judgment Rule

In *Enrietto v. Rogers Townsend & Thomas PC,* 49 V.I. 311, 315 (V.I. 2007), we enunciated our adherence to the final judgment rule. We stated that this Court's jurisdictional analysis proceeds from the final judgment rule. *Id.* We stated further that title 4, section 32(a) of the Virgin Islands Code encompasses the final judgment rule in the Virgin Islands, and that the rule requires that a party must raise all claims in a single appeal to this Court after a final judgment of the Superior Court on the merits of the case. *Id.* (citing *Richardson-Merrell, Inc, v. Koller,* 472 U.S. 424, 429-430, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985)). Therefore, I shall review the Superior Court's August 22, 2007 Order under the final judgment rule analysis.

I am mindful, however, that there are "a great variety in remands, reflecting in turn the variety of ways in which agency action may be challenged in the [trial] courts and the possible outcomes of such challenges." *Sullivan v. Finkelstein,* 496 U.S. 617, 623, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990).[9] Instructing further on the circumspection this Court must exercise in appellate review of remand orders, the United States Court of Appeals for the Third Circuit ("Third Circuit") has stated:

> Moreover judicial review of agency action appears in different guises. The governing statute may authorize judicial review of agency action that is essentially adjudicatory. *E.g.,* 42 U.S.C. § 405(g) (1982). It may authorize review of legislative rulemaking which is neither adjudicatory nor adversarial. *E.g.,* 15 U.S.C. § 2618 (1982). It may authorize review of the non-adversarial grant of a license. *E.g.,* 47 U.S.C. § 402 (1982). Each of these different kinds of agency actions may present the issue of finality differently. Any one of them may present it differently by virtue of the type of relief sought and the type of relief ordered. Thus finality holdings in one such context may shed very little light on another.

---

[9] *Finkelstein* reviewed the remand provisions of the Social Security Act. However, the United States Court of Appeals for the Third Circuit ("Third Circuit") has recognized an extension of *Finkelstein's* reach. *Kreider Dairy Farms, Inc. v. Glickman,* 190 F.3d 113, 119 (3d Cir. 1999) ("it is clear that *Finkelstein* did not simply apply our general exception to finality to a social security case, but rather created a separate exception to the finality rule based on the language of the Social Security Act."). Finkelstein's viability, however, remains limited to the interpretation of statutes similar to the Social Security Act.

*Horizons Intern., Inc. v. Baldrige,* 811 F.2d 154, 158-159 (3d Cir. 1987); *see also,* 15B CHARLES ALAN WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.32 (2d ed. 1992; 2008 Update) ("The administrative action may be essentially adjudicatory, essentially legislative, or some nonadversarial action such as grant of a license. The issue of finality is affected by the nature of the administrative proceeding and the framework of judicial review as well as the character of the remand order.").

Therefore, the Virgin Islands' jurisdictional statutes, which empower the Superior Court to review final decisions of administrative agencies, must be examined scrupulously. The Superior Court's general authority to review a decision of an administrative agency pursuant to a petition for a writ of review derives from title 5, section 1421 of the Virgin Islands Code.[10] Also, the Superior Court's authority to issue a writ of review is found in title 5, section 1422 of the Virgin Islands Code.[11] Pursuant to title 5, section 1423 of the Virgin Islands Code[12] the Superior Court has the "power to affirm, modify, reverse, or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision."

---

[10] 5 V.I.C. § 1421. "Proceedings and orders reviewable" provides:

Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

[11] 5 V.I.C. § 1422. "Grounds for writ" provides:

The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, to the injury of some substantial right of the plaintiff.

[12] 5 V.I.C. § 1423. "Powers of court on review; appeal" provides:

Upon the review provided for in this chapter the court shall have power to affirm, modify, reverse, or annul the decision or determination reviewed, and, if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision. From the judgment of the district court on review an appeal may be taken in like manner and with like effect as from a judgment of such district court in a civil action.

I have examined the statute authorizing judicial review of the PERB's decisions, which is title 3, section 530a(a). Section 530a(a), which was enacted on July 5, 2002, provides in pertinent part:

> Any party aggrieved by any final order of the PERB issued under section 530 or 531 of this chapter, may appeal to the Superior Court of the Virgin Islands. An application for review must be filed within 30 days after the date of the Final Order and name the PERB as a party respondent.

Significantly, section 530a(a), which has a 30-days appeal provision, was not enacted when Crooke filed his petition for a writ of review on August 29, 2001. However, section 530a(a) had been enacted at the time of the Superior Court's Remand Order.

Nonetheless, whether this Court has jurisdiction to review an order remanding a case to the PERB depends on whether the case being remanded could be appealed after the subsequent hearing at the PERB. Therefore, section 530a(a) is critical in my assessment of whether the PERB's decision can be appealed after remand of the case to the PERB and a hearing on the merits of Appellee's claims. Accordingly, I punctiliously examine the efficacy of section 530a(a).

We have held that the final judgment rule promotes efficient judicial administration and precludes parties from initiating time-consuming interlocutory appeals. *In re Everett Le Blanc,* 49 V.I. 508 (V.I. 2008). Additionally, the rule protects the trial court's authority to supervise litigation without piece meal appellate review. *Id.* Notwithstanding its obvious advantages and the enormous legal precedent supporting the final judgment rule, I am mindful of its exceptions. *Id.* Next, I examine the general rule that remand orders are not immediately reviewable.

## B. The Administrative-Remand Rule

Consistent with the final judgment rule, an order remanding a case to an administrative agency for further proceedings is not a final order and is not immediately appealable. *See, Shalala v. Schaefer,* 509 U.S. 292, 295, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993); *see also, Kreider Dairy Farms, Inc. v. Glickman,* 190 F.3d 113, 118 (3d Cir. 1999) ("Normally, an order remanding for further proceedings is not a final order subject to immediate appellate review. . . ."); *see also, Bhd. of Maint. Way*

*Employees v. Consol. Rail Corp.*, 864 F.2d 283, 285 (3d Cir. 1988) ("The general principle . . . is that [trial court] orders remanding cases to administrative agencies are not final and appealable.").

Under the purported "administrative-remand rule," a remand from a reviewing court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision. *See, e.g., S. Utah Wilderness Alliance v. Kempthorne,* 525 F.3d 966, 970 (10th Cir. 2008); *see also, Trout Unlimited v. U.S. Dept. of Agric.,* 441 F.3d 1214, 1218 (10th Cir. 2006) (quoting *Baca-Prieto v. Guigni,* 95 F.3d 1006, 1008 (10th Cir.1996)). However, the administrative-remand rule comes with exceptions. *See, e.g., Trout Unlimited,* 441 F.3d at 1218; *Glickman,* 190 F.3d at 118 ("Naturally, however, this general rule is subject to several exceptions.") (footnote omitted). There is a cognizable class of orders in which remand cases to administrative agencies also qualify for immediate appeal. My task is to determine whether the Superior Court's August 22, 2007 Remand Order falls within an exception to the final judgment rule and, therefore, qualifies for immediate appellate review.

## C. Exceptions to the Administrative-Remand Rule

Although *Enrietto* did not decide a remand order, I build upon the exceptions to the final judgment rule outlined in *Enrietto,* because these exceptions apply with equal force in our consideration of remand orders. To the two *Enrietto* exceptions, the interlocutory appeals and the collateral orders doctrines, I add two more exceptions; the *Finkelstein-Forney* exception and the Third Circuit's administrative-remand rule exception. Therefore, four circumstances exist whereby an order remanding a case to an administrative agency is immediately reviewable; namely, (1) the interlocutory appeals exception, (2) the collateral orders doctrine exception, (3) the *Finkelstein-Forney* exception, and (4) the Third Circuit's administrative-remand rule exception. I will discuss each of these exceptions *in seriatim,* while simultaneously applying each exception to the Superior Court's August 22, 2007 Remand Order.

### 1. The Interlocutory Appeals Exception Provided by Law

To reiterate, title 4, section 32(a) provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, *or as otherwise provided by law."* 4 V.I.C. § 32(a) (emphasis added). Additionally, title 3, section 530a

provides for appellate review of decisions made by the Superior Court pursuant to title 3, chapter 25. Specifically, section 530a(d) provides that "[t]he District Court of the Virgin Islands shall have appellate jurisdiction of any decision of the Superior Court made pursuant to this chapter, *unless otherwise provided by law*." 3 V.I.C. § 530a(d) (emphasis added). Thus, both statutory provisions, which could potentially grant this Court jurisdiction over this case, contain textual limitations on their respective grants of jurisdiction. Importantly, the "as otherwise provided by law" clauses in title 4, section 32(a) and in title 3, section 530a of the Virgin Islands Code make self-evident that the legislature empowered local courts to deviate from the final judgment rule in appropriate circumstances. I will now address whether such deviation is permissible under the circumstances in this case.

The first rule of statutory interpretation provides "[w]hen the statutory language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Arlington Cent. School Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296, 126 S. Ct. 2455, 165 L. Ed. 2d 526 (2006) (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)) (internal quotation marks omitted); *see also Carcieri v. Salazar,* 555 U.S. 379, 129 S. Ct. 1058, 1063-64, 172 L. Ed. 2d 791 (2009) (citations omitted). Although a statute may be unambiguous, "the implications of a statute may be altered by the implication of a later statute." *Gomez-Perez v. Potter,* 553 U.S. 474, 128 S. Ct. 1931, 1950, 170 L. Ed. 2d 887 (2008) (quoting *United States v. Fausto,* 484 U.S. 439, 453, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988)) (internal quotation marks omitted). Title 4, section 33 of the Virgin Islands Code, which provides for interlocutory appeals to this Court, was enacted on October 29, 2004 and subsequent to the enactment of section 530a(d). *See* Act. No. 6687, Oct. 29, 2004, § 2, Sess. L. 2004, p. 186. Accordingly, when the legislature enacted title 4, section 33 it specifically and narrowly defined the jurisdictional limits of this Court's scope of review. The language in title 3, section 530a(d), does not expand this Court's authority to review non-final judgments as enumerated in title 4, section 33.

Importantly, it is a well-known canon of statutory interpretation that every clause and word in a statute is to be given effect. *See Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 237, 128 S. Ct. 831, 169 L. Ed. 2d 680

(2008) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)) (quotation marks omitted). Therefore, in discerning whether this Court has jurisdiction over a non-final judgment of the Superior Court regarding a ruling by the PERB under section 530a(d), it is evident that I must be mindful that the words "unless otherwise provided by law" in section 530a(d) compel this Court to consider a subsequently enacted statute that specifically sets forth this Court's jurisdiction to decide interlocutory appeals pursuant to title 4, section 33.

In title 4, section 33(b) of the Virgin Islands Code, the legislature provided for appeals to this Court in cases that would otherwise be in derogation of the final judgment rule, by permitting interlocutory appeals in cases involving injunctions, appointing of receivers and receiverships.[13] This case does not involve any of the three subjects for which an interlocutory appeal is allowed under section 33(b). Nonetheless, title 4, section 33(c)[14] of the Virgin Islands Code provides a procedure for interlocutory appeals in civil matters with certification for appeal by the trial court. *In re Everett le Blanc,* 49 V.I. at 524. Section 33(c) grants full authority to the trial judge to issue an order allowing for a civil interlocutory appeal. *See id.* The order of the Superior Court must

---

[13] Title 4, section 33(b) provides exceptions from the finality rule as follows:

(b) Interlocutory review-civil. The Supreme Court of the Virgin Islands has jurisdiction of appeals from:
(1) Interlocutory orders of the Superior Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions;
(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property[.]

[14] Title 4, section 33(c) provides:

Whenever the Superior Court judge, in making a civil action or order not otherwise appealable under this section, is of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation, the judge shall so state in the order. The Supreme Court of the Virgin Islands may thereupon, in its discretion, permit an appeal to be taken from the order, if application is made to it within ten days after the entry of the order; except that application for an appeal hereunder may not stay proceedings, in the Superior Court unless the Superior Court judge or the Supreme Court or a justice thereof orders a stay of the proceedings.

state "that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation." 4 V.I.C. § 33(c). In this case, there is no order from the Superior Court supporting a civil interlocutory appeal. Moreover, there is no intimation or affirmative action reflected in the trial record, confirming that any party attempted to perfect an interlocutory appeal from a section 33(c) order of the Superior Court. Accordingly, the interlocutory appeals exception to the final judgment rule is inapplicable to this case. Nevertheless, the interlocutory appeals exceptions found in various final judgment statutes form the basis of another exception, the collateral orders exception.[15]

## 2. The Collateral Orders Exception

Another basis to support the immediate appeal of an order in derogation of the final judgment rule is the collateral orders doctrine. This doctrine was expounded by the Supreme Court of the United States in the seminal case, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949).[16] The "collateral orders doctrine" encompasses only a small class of cases where:

---

[15] In determining the court's jurisdiction, the *Cohen* Court first reviewed Title 28 of the United States Code, sections 1291 (which provides for appeals only from final decisions of the federal trial court) and 1292 (which provides for appeals of certain interlocutory orders, decrees and judgments)). *Cohen* concluded that section 1292 indicated Congress's "purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties." *Cohen,* 337 U.S. at 545. *Cohen* further reasoned that Congress did not "allow[] appeals only from those final judgments which terminate an action[.]" *Id.* In addition, the Court stated that the effect of the statute "is to disallow appeal from any decision which is tentative, informal or incomplete." *Id.* at 546. "Appeal gives the upper court a power of review, not one of intervention[,]" wrote the Court. *Id.* Title 28 of the United States Code, sections 1291 and 1292 are similar to title 4, sections 32 and 33 of the Virgin Islands Code and must be construed alike. *In re Everett Le Blanc,* 49 V.I. 508, 523 (V.I. 2008) ("statutes with similar language and purpose are construed alike."). Likewise, I construe sections 32(a) and 33 practically, rather than technically. Therefore, the logic of *Cohen* applies with full force in my evaluation because our statutes and the federal statutes are identical.

[16] In *Cohen* a stockholders derivative suit was pending when a New Jersey statute requiring plaintiffs in such cases to post security for costs was enacted. The trial court's refusal to order a plaintiff to post security for costs, as required by the New Jersey statute, was found to be immediately appealable. The New Jersey statute required a plaintiff with a small interest in the corporation (no more than $9,000) to be liable for all expenses and attorney fees of the defense if the plaintiff fails to make good his complaint and to entitle the defendant-corpo-

272

Th[e] decision appears to fall in that small class which finally determine claims of right separable from and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction.

*Id.* at 546 (citing *Bank of Columbia v. Sweeny,* 26 U.S. 567, 569, 1 Pet. 567, 7 L. Ed. 265 (1828); *United States v. River Rouge Improvement Co.,* 269 U.S. 411, 414, 46 S. Ct. 144, 145, 70 L. Ed. 339 (1926); *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S. Ct. 540, 542, 84 L. Ed. 783 (1940)). "The requirements for collateral order appeal have been distilled down to three conditions. . . ." *Will v. Hallock,* 546 U.S. 345, 349, 126 S. Ct. 952, 957, 163 L. Ed. 2d 836 (2006); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (citing *Koller,* 472 U.S. at 429-430). The conditions are:

[F]irst, the order must "conclusively determine the disputed question." Second, the order must "resolve an important issue completely separate from the merits of the action." *Ibid.* Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." *Ibid.*

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 276, 108 S. Ct. 1133, 1136-1137, 99 L. Ed. 2d 296 (1988).

These requirements are rigidly enforced. "[F]ailure to meet even one of the factors renders the doctrine inapplicable as a basis for appeal, no matter how compelling the other factors may be." *Enrietto,* 49 V.I. at 319 (citing *V.I. v. Hodge,* 359 F.3d 312, 320, 45 V.I. 738 (3d Cir. 2004)); *Gulfstream,* 485 U.S. at 276. "[T]he collateral order doctrine should be construed narrowly, lest this exception to the final judgment rule swallow the rule itself." *United States v. Wecht,* 537 F.3d 222, 244 (3d Cir. 2008) (citing *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994); *We, Inc. v. City of Phila.,* 174 F.3d 322, 324 (3d Cir.1999)).

---

ration to indemnity before the case can be prosecuted (a $125,000 bond). The United States District Court ruled that the indemnity statute was not applicable. The Third Circuit reversed in an opinion that was affirmed by the Supreme Court in its now famous opinion. *Id.* at 557.

The Superior Court's August 22, 2007 Remand Order does not satisfy *any* condition upon which the doctrine of the collateral order rule can be applied. First, orders such as the August 22, 2007 Order which remanded the case for further hearing on the merits are expressly excluded from the collateral orders doctrine. *Cohen* makes explicit that the final judgment rule *does not* "permit appeals even from fully consummated decisions, where they are but steps towards final judgment in which they will merge." *Cohen,* 337 U.S. at 546; *see also, Caesar v. West,* 195 F.3d 1373, 1374 (Fed. Cir. 1999) ("Remands to administrative agencies, because they mark a continuation of the case, are not generally considered final decisions for jurisdictional purposes."); *see supra* IV(B). The Superior Court's decision to remand this case to the PERB was essentially a step towards a final order, which will eventually emanate from a remand hearing and decision before the PERB and a subsequent appeal of the PERB's decision to the Superior Court. *See Crooke,* 49 V.I. at 56.

In a hearing before the PERB, the parties may reassert their arguments from which a final order would be generated and be available for review by the Superior Court upon a petition for a writ of review by *"[a]ny party* aggrieved by any final order of the PERB." 3 V.I.C. § 530a(a). The explicit statutory intent of section 530a(a) includes allowing the PERB to be a party to any appeal of its decisions. This contention is buttressed by the legislative history of section 530a(a). Importantly, the legislative history of title 3, section 530a(a), (Bill No. 24-0259), reveals the following:

> SENATOR COLE: . . . .
>
> Mr. President, this amendment seeks to amend Title 3, speaks to the fact of PERB agreement or PERB order. Once PERB have issued an order and it goes to court the people take this order to court and not naming PERB as on of the participants in this order before it goes to court. What this is saying that if the order comes from PERB and it goes to court PERB must be one of the parties name in this particular order. And that's what this is saying because they go to court and then PERB is left out, but PERB is the one who made the decision when the parties were before PERB. And we are asking — and its basically kind of a uniform language that is throughout the continental United States but that agency must be done. And Mr. President, you know if go to court and the agency that is responsible for carrying out if you don't

deal with that agency then the court is not going to hear that order. The issue as they say in legal terms is not ripe — right attorney? It is not ripe to be before the court before it goes through the administrative agency. PERB becomes the administrative agency and this order must come from PERB and go through PERB. And once it is appealed through the court PERB must be a party to this. And Mr. President that's what this amendment does, and I ask my colleagues for their support. . . .

. . . .

SENATOR JONES: Thank you. Mr. President, I think the issue of involving PERB in any court proceeding based on any ruling that they may have I think is a good one. And if that's what the amendment is doing I will withdraw my objection. . . .

Bill No. 24-0259, Sess. L. 2002 Legis. History, p. 121-24. Accordingly, before this Court is the type of order which was expressly excluded from the collateral orders doctrine when the *Cohen* Court created the doctrine. Additionally, the doctrine does not apply in this case because the Superior Court's Order cannot satisfy the doctrine's first prong of conclusively determining the disputed question, which is the merits of Crooke's appeal. Moreover, the Superior Court's order specifically instructs that the pivotal issue on remand is precisely the merits of Appellee's claims. Nevertheless, to clarify why this Remand Order comprehensively fails to qualify under the doctrine, I assess the two remaining requirements of the doctrine.

The Superior Court's Remand Order does not satisfy the second prong of the collateral orders doctrine, which requires that an order subject to an immediate appeal be completely separate from the merits of the action. The linchpin of this case is whether Crooke had successfully transferred from an exempt employee status to a regular employee status, which would allow him to appeal his termination to the PERB under section 530. The merits of the action are welded to the Superior Court's Order, which directed the PERB to conduct a full hearing on the merits of Crooke's case. The issue of whether Appellee successfully transferred from the status of an exempt employee to a regular employee status is a preliminary issue to having a "full hearing on the merits of Appellee's claims" as ordered by the Superior Court in its Remand Order. If Appellee became a regular employee because of a successful transfer, the PERB

has jurisdiction to hear the merits of his case, as ordered by the Superior Court. The issue of whether Appellee transferred to a regular employee statutes making him eligible for a hearing before the PERB on the merits of his claims is inseparable from the merits of Appellee's claim. Thus, the collateral order doctrine cannot apply to this case.

Importantly, the issue of whether the charges against Crooke justified the termination of his employment has not yet been decided by the PERB. Because of its belief that it lacked jurisdiction, the PERB never considered the merits of the case. Therefore, because the order sought to be appealed is intertwined with the merits of the case, the second prong of the collateral order doctrine is lacking.

Likewise, the Superior Court's Remand Order also fails to satisfy the third prong of the collateral orders doctrine. Under this prong, an order is effectively reviewable "only where the order at issue involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 498-99, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989) (quotations omitted). "[W]e have insisted that the right asserted be one that is essentially destroyed if its vindication must be postponed until trial is completed." *Id.* at 499.

No discernable legal right of any party will be destroyed or lost by barring an immediate appeal in this case. On remand and after a hearing before the PERB and a decision, any aggrieved party may appeal the PERB's decision by seeking a writ of review in the Superior Court. The aggrieved party must name the PERB as a party in the proceedings for a writ of review, thus ensuring that the PERB is afforded the opportunity to propound its arguments in the Superior Court before a final judgment is entered in that court. Additionally, *Cohen* expressly prohibits appeals of interim orders from administrative proceedings when the issue in the interim order can be resolved later by the entry of a final order. *Cohen,* 337 U.S. at 545-46. Moreover, the order of the lower court is intertwined with the merits of the case; therefore, there is no separate, legal or practical issue distinct from the merits of the action, which are too important to be denied review at the procedural juncture of the case and which cannot be deferred until the whole case is adjudicated on the full

merits of Appellant's claims. Consequently, the collateral orders doctrine cannot apply in this case.[17]

### 3. The *Finkelstein-Forney* Exception

The Supreme Court of the United States has construed a federal Social Security Statute as providing an exception to the general rule that remand orders are not final orders and, hence, are not immediately reviewable.

---

[17] My conclusion happens to coincide with the views of the late Professor Charles Wright, Professors Arthur R. Miller and Edward H. Cooper that the three requirements of the collateral orders doctrine are frequently not met, although "an impressive number of cases" cite the doctrine when they order immediate appeals. One of the reasons the authors found for courts' resort to the doctrine is that the courts do not desire for administrative agencies to be in contempt before they can appeal their own decisions, a circumstance, I must underscore, that is unlikely to occur under section 530(a) cases because the PERB becomes a mandatory respondent in any petition for review. In the words of Wright, Miller and Cooper:

> An impressive number of cases have permitted collateral order appeal from district court orders remanding for further administrative proceedings. The decisions rely on varying combinations of several concerns. One obvious concern is the burden and delay that may be imposed by unnecessary administrative proceedings. A closely related pair of concerns is found in decisions emphasizing the importance of resolving important questions of law and expressing the fear that further administrative proceedings may defeat the possibility of review even upon final disposition in the district court. Appeal of the eventual final judgment may not support review of the initial remand decision for a number of reasons: the agency may be barred by statute from appealing its own eventual decision, a decision made in conformity with the order of the district court may moot the question, and so on. Less frequently, courts also note the unseemliness of forcing a government agency to act in contempt so as to force an opportunity for immediate appeal, or the risk that benefits paid pending further proceedings cannot be recaptured later. Most of the cases permitting collateral order appeal allow appeal by the agency. The justification for relying on collateral order theory in these circumstances is not self-evident. The grounds for remand usually are bound up, often tightly, with the merits of the underlying dispute. Many district court rulings are held unappealable despite the often considerable burden of further proceedings that may be wasted if the earlier ruling is later set aside; it would be difficult to assert that as a general matter the burden of further administrative proceedings is greater than the burden of further trial court proceedings. It would be nearly as difficult to administer a collateral order appeal doctrine relying on a case-by-case assessment of the probable burdens imposed by further administrative proceedings. Many orders are held unappealable despite the prospect that there may be no later opportunity for review, and often enough in hopes that there will be no later opportunity. The most cogent explanation for most of these decisions must be that administrative agencies, as more or less coordinate branches of government, deserve the protection of special appeal opportunities.

15B CHARLES ALAN WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.32 (2d ed. 1992; 2008 Update); *see also* 190 F.3d at 124 (Sloviter, J., concurring).

*Sullivan v Finkelstein,* 496 U.S. 617, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990). In *Finkelstein,* the United States Supreme Court found that a trial court's order remanding a matter for further administrative agency proceedings under the Social Security Act ("SSA") is a final judgment which can trigger an immediate appeal. *Id.* The Court reasoned that the first sentence of the statute under review, section 405(g) of the SSA, "provides [that] an individual denied benefits by a final decision of the Secretary may obtain judicial review of that decision by filing 'a civil action'. . . ." *Id.* at 624.

For the Supreme Court of the United States, that statute's "use of the term a 'civil action' suggests that at least in the context of section 405(g), each final decision of the Secretary will be reviewable by a separate piece of litigation." *Id.* at 624-625 (footnote omitted). Based upon the plain language of the SSA, the Supreme Court of the United States concluded that notwithstanding a trial court's power to remand under the statute, such a remand was nonetheless a judgment within the meaning of the SSA;[18] therefore, it is immediately appealable. *See id.* at 625. The Court elucidated its reasons for the conclusion that the order was immediately reviewable:

> The [trial] [c]ourt's remand order was unquestionably a "judgment," as it terminated the civil action challenging the Secretary's final determination that respondent was not entitled to benefits, set aside that determination, and finally decided that the Secretary could not follow his own regulations in considering the disability issue. Furthermore, should the Secretary on remand undertake the inquiry mandated by the

---

[18] The pertinent language of the Social Security Act, examined by the Supreme Court, is as follows:

> [T]he district court shall have the power to enter "a *judgment* affirming, modifying, or reversing the decision of the Secretary, *with or without remanding the cause for rehearing."*
>
> . . .
>
> "[t]he judgment of the court *shall be final* except that it shall be subject to review in the same manner as a judgment in other civil actions."

*Finkelstein,* 496 U.S. at 625. The Supreme Court reviewed the sentences constituting section 405(g) of the SSA. It found the first, fourth, and eight sentences useful in reaching its conclusion that the remand order at issue was appealable.

[trial] [c]ourt and award benefits, there would be grave doubt, as the Court of Appeals recognized, whether he could appeal his own order.

*Finkelstein,* 496 U.S. at 625. It is noteworthy that the Remand Order in this case does not involve Social Security benefits. Thus *Finkelstein* and any principle it espouses are inapplicable to this case.

The Superior Court Order did not grant or deny Crooke any type of benefit; therefore, the Order would be non-appealable. The Superior Court only determined that the PERB has jurisdiction to hear Appellee's appeal, that there were legal errors in the PERB's decision, and that the case be remanded the case to the PERB for the PERB to hold hearings on the merits of Appellee's claims. Moreover, irrespective of which party prevails at the remand hearing of Crooke's appeal of his termination, there is absolutely no doubt that the PERB's decision and order can be appealed under section 530a(a).

Subsequently, in *Forney v. Apfel,* 524 U.S. 266, 270, 118 S. Ct. 1984, 141 L. Ed. 2d 269 (1998), the Supreme Court clarified that its *Finkelstein* decision was indeed limited to determinations under the Social Security Act. The Court explicated that *Finkelstein* construed an exception to the finality rule which is specifically limited to the SSA. "Nor does the opinion's reasoning permit an inference that 'finality' turns on the order's importance or the availability (or lack of availability) of an avenue for appeal from the different, later, agency determination that might emerge after remand." *Id.* Therefore, *Forney* is inapplicable to this case. *See also Kreider Dairy Farms, Inc.,* 190 F.3d at 120 ("to date, no court has applied *Forney* to a case not arising under the Social Security Act."). Accordingly, the *Finkelstein-Forney* exception to the general rule that remand orders are not immediately appealable does not apply in this case. Next, I review the Third Circuit's administrative-remand rule exception.

### 4. The Third Circuit Court's Administrative-Remand Rule Exception

"The opinion of [the Third Circuit] which best gives guidance to the finality of [trial] court orders in administrative review cases is *United Steelworkers of America Local 1913 v. Union R.R. Co.,* 648 F.2d 905 (3d Cir. 1981)." *Horizons Int'l., Inc. v. Baldrige,* 811 F.2d 154, 159 (3d Cir. 1987). I have reviewed the *United Steelworkers* factors along with other cases that amplify the Third Circuit's administrative-remand rule

exception, and I conclude that the Third Circuit's exception is inapplicable to section 530a(a) remand cases. In *United Steelworkers,* the Third Circuit held that "when a [trial] court's order can be characterized as a final disposition of the present litigation or when dismissal of the appeal will have the practical effect of denying later review, we have recognized that the exercise of appellate jurisdiction . . . may be appropriate." *United Steelworkers,* 648 F.2d at 909; *see also, Horizons Intern., Inc. v. Baldrige,* 811 F.2d 154, 160 (3d Cir. 1987).

To reach its conclusion that the trial court's remand order was "a final disposition of the present litigation" or that "dismissal of the appeal [would] have the practical effect of denying later review," therefore rendering the order subject to immediate appeal, the *United Steelworkers* Court considered four factors. The factors are: first, whether the remand order is authorized by statute. *Id.* at 909; second, whether the trial court "directed the Board to follow certain guidelines or standards, which could then be challenged on a later appeal." *Id.* at 910 (citing *Bachowski,* 545 F.2d at 372-73); third, whether the trial court "left no part of the . . . petition undecided . . . and [the order] represented an effective end to the . . . hearings and litigation concerning the termination of . . . employment."; and fourth, whether upon "completion of new hearings . . . later review may well be unavailable." *Id.* (citations omitted); *see also, Baldridge,* 811 F.2d at 160.

Upon reviewing the *United Steelworkers* factors, I immediately observe that the provisions of title 3, section 530a(a) and title 5, sections 1421 and 1422 of the Virgin Islands Code preclude application of the Third Circuit's exception as a basis to grant an immediate or interlocutory appeal in this case. When I apply the first *United Steelworkers* factor, it is obvious that the Superior Court's Remand Order was a lawful order mandating a remand, which is authorized by title 5, section 1421. Section 1421 authorizes the Superior Court to review final orders and intermediate orders of administrative agencies. *See* 5 V.I.C. § 1421 ("the [c]ourt may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed."). Additionally, title 5, section 1423 vests the Superior Court with the "power to affirm, modify, reverse, or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision."

In considering the second *United Steelworkers* factor,[19] I discern that the Superior Court specifically concluded in its decision that Crooke's election of classified status was valid under territorial law and that the PERB has jurisdiction to adjudicate Crooke's claim in his appeal. Thereafter, the Superior Court clearly directed the PERB to conduct further hearings consistent with its order. All these determinations are articulated in the trial court's published opinion. Indeed, it is axiomatic that jurisdictional issues can be raised at any time. Consequently, as a result of the Superior Court's remand, Appellants will still have the ability to later appeal the PERB's decision and order, if the PERB enters an order adverse to Appellants.

Likewise, the third *United Steelworkers* factor[20] does not apply to the Superior Court's Order in this case. The Superior Court's August 22, 2007 Remand Order resolved most of the issues raised in Crooke's August 29, 2001 Petition for Writ of Review. (*See* J.A. at 391.) However, it declined to resolve Crooke's claim that "PERB's decision . . . does not comply with the statutory requirements." (*Id.* at 393.) For Crooke, the applicable statutes require a hearing on the merits of his case. The trial court's Order did not resolve the substance of Crooke's May 16, 2001 letter to the PERB challenging his termination which, according to him, was based on the government's use of "accusation as facts."[21] Therefore, the Superior Court's subsequent Order, unlike the order entered by the Superior Court in *United Steelworkers,* did not resolve all the issues raised in Crooke's appeal.

---

[19] Whether the trial court "direct[ed] the Board to follow certain guidelines or standards, which could then be challenged on a later appeal." *Id.* at 910.

[20] Whether the trial court "left no part of [the] . . . petition undecided . . . [and the order] represented an effective end to the . . . hearings and litigation concerning the term in action." *Id.*

[21] Crooke wrote:

> On 12/05/01 when I returned from a trip to the US Mainland I received a letter signed by Governor Turnbull stating that I was terminated from my employment at the Department of Planning and Natural Resources. This letter stated accusation as facts that were arrived at without allowing me due process. I hereby request the protection provided me under Title 3, Chapter 25, Sections 530 and 531 of the Virgin Islands Code. There is no merit to my dismissal and the Department is treating me arbitrarily.

Letter from Clifford Crooke to Aubrey Lee, Chairman of PERB, P.O. Box 25435, Gallows Bay, St. Croix (May 16, 2001) (J.A. at 15.)

The last factor for determining the appropriateness of the immediate appealability of a Superior Court's Remand Order under *United Steelworkers*[22] is also not satisfied by the Superior Court's Remand Order. Upon remand to the PERB and after a hearing on the merits of Crooke's appeal before the PERB, any aggrieved party can seek from the Superior Court a writ of review for the PERB's final decision. This contention is based upon the explicit language of title 3, section 530a(a), which provides in pertinent part: "Any party aggrieved by any final order of the PERB issued under section 530 or 531 of this chapter, may appeal to the Superior Court of the Virgin Islands." Based on *United Steelworkers* precepts, it is obvious that the Superior Court's August 22, 2007 Order was neither a "final disposition of the present litigation" nor would a "dismissal of the appeal . . . have the practical effect of denying later review."

As the *United Steelworkers* case illustrates, the nature of the Superior Court's Order and the judicial review provisions of the Virgin Islands Code, specifically title 3, section 530a(a) and title 5, sections 1421, 1422 and 1423, undermine the applicability of the Third Circuit's administrative-remand rule exception and all the other exceptions to a vanishing point.[23]

### 5. Errors of the Court Do Not Constitute Exceptions to the Final Judgment Rule and Do Not Grant Jurisdiction

Appellants complain that the trial court erred by creating a new record that is not part of the PERB's administrative record, when it admitted

---

[22] Whether upon "completion of new hearings . . . later review may well be unavailable." *United Steelworkers,* 648 F.2d at 910.

[23] I note that another jurisdiction has recognized "the judicial economy exception" to its final judgment rule. *Efstathiou v. The Aspinquid, Inc.,* 2008 ME 145, 956 A.2d 110, 118 (Me. 2008). The "judicial economy exception, permits appeals of nonfinal orders when (1) appellate review provides 'final, or practically final, disposition of the entire litigation,' and (2) the interests of justice require immediate review." *Id.* (quoting and citing *Austin v. Universal Cheerleaders Ass'n,* 2002 ME 174, 812 A.2d 253, 256 (Me. 2002)). I do not discuss this standard separately because the remand in Crooke's case does not qualify for an immediate appeal as it did not dispose of the entire litigation and because the interests of justice in the Virgin Islands, as demonstrated by section 530a(a), requires compliance with the final judgment rule. Furthermore, the standard is indistinguishable in substance from the Third Circuit's exception and, additionally, the judicial economy exception is not specifically directed toward remands to administrative agencies.

letters concerning Crooke's election efforts. This assertion is insufficient to grant appellate jurisdiction in this case. Usually, it is not within the province of the appellate court reviewing a decision of the trial court to construct its own record, outside the administrative agency record. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973). Furthermore, the Supreme Court has instructed:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985). The case of *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985) supports the proposition that the Superior Court should have remanded the case to the administrative agency to consider Appellant's "election" letters.

I am mindful that the Superior Court granted Crooke's writ of review, even though his petition was purportedly untimely filed, because it was filed more than thirty days after the PERB's decision. Rule 15(a) of the Superior Court Rules[24] allows thirty days from the date of the PERB's decision for a party to file a petition for a writ of review. In its Order, the

---

[24] Rule 15(a) of the Superior Court Rules provides:

Rule 15. Writs of Review

(a) A writ of review may be granted by the Court upon the petition of any person aggrieved by the decision or determination of an officer, board, commission, authority or tribunal. Such petition shall be filed within 30 days after the date of the decision or determination complained of and shall recite such decision or determination and set forth the errors alleged to have been committed therein. The petition shall be signed by the petitioner or his attorney, and shall be accompanied by the certificate of the attorney that he has examined the process or proceedings and the decision or determination therein sought to be reviewed, that the same is in his opinion erroneous and that the petition is not filed for delay.

Superior Court recited that the PERB dismissed Crooke's appeal on July 26, 2001, for lack of jurisdiction. *Crooke,* 49 V.I. at 49. The Superior Court also noted that the "instant 'action for writ of review' was filed on August 29, 2001." *Id.* The thirty day period within which Crooke should have filed his petition for a writ of review to have the PERB's decision reviewed by the Superior Court lapsed on August 27, 2001.[25] Therefore, it appears that Crooke's August 29, 2001 Petition for a Writ of Review was untimely filed.

Crooke's apparent untimely filing under Rule 15(a) is not fatal, because the thirty-day time limit is not established by statute. In *Pichardo v. Comm'r of Labor,* 49 V.I. 447, 451 (V.I. 2008) we dismissed an appeal because the appeal was filed beyond the statutory time limit. We explained that "courts are without authority to apply equitable principles to disregard the time limits established by statute for prosecuting appeals." *Pichardo,* 49 V.I. at 450. In this case, however, the applicable time limit was not set by statute, but by a rule of the Superior Court. The corresponding statute, title 5, section 1421, does not set a time limit for filing a writ of review.

I am aware that the Superior Court assumed that "[t]his matter is brought pursuant to [title 3, section] 530a(a)." If this were correct, but it is not, it would have been fatal to Appellant's case, because Crooke's Notice of Appeal was filed after the thirty-day deadline. *See Pichardo,* 49 V.I. at 450 (thirty-day statutory deadline for filing a writ of review is jurisdictional). However, section 530a(a) was enacted on July 5, 2002, whereas the PERB's decision was issued in 2001. Therefore, the appeal was brought to the Superior Court before section 530a(a) was enacted. *See Supra,* note 8. To emphasize, this oversight by the Superior Court cannot grant this Court jurisdiction. The Third Circuit's reasoning in an analogous case is instructive:

> We are not entirely comfortable with leaving in place without review a district court order which on its face appears to be in stark violation of the principle of limited judicial review of arbitration orders. *See* 45

---

[25] The trial court wrote "[t]his matter is brought pursuant to [title 3, section] 530a, which gives a party the right to appeal a final order of the PERB issued under [section] 530, within thirty (30) days of said Order, to the Superior Court via a *petition* for writ of review." *Crooke,* 49 V.I. at 49-50 (footnotes omitted). It appears that the court simply overlooked the slight lapse of time within the thirty-day deadline.

U.S.C. § 153, First (q) (1982); *Atchison, T. & S. Fe Ry. v. Buell,* 480 U.S. 557, 563, 107 S. Ct. 1410, 1414, 94 L. Ed. 2d 563 (1987) (scope of review of arbitrators decisions under RLA " 'among narrowest known to law' ") (quoting *Union Pacific Ry. v. Sheehan,* 439 U.S. 89, 99 S. Ct. 399, 58 L. Ed. 2d 354 (1978)). This is, however, a potential problem whenever we are confronted with an appeal from an interlocutory order. Therefore, because this appeal fails to fall within any of the narrow exceptions to the strict view of finality embodied in the [final judgment rule], we will, for the reasons set forth above, dismiss the appeal for lack of jurisdiction.

*Bhd. of Maint. of Way Employees v. Consolidated Rail Corp.,* 864 F.2d 283, 287 (3d Cir. 1988).

As in the *Brotherhood of Maintenance of Way Employees* case, I conclude that the Superior Court's August 22, 2007 Remand Order does not fall within any of the narrow exceptions to our final judgments, final decrees or final orders rule embodied in title 4, section 32(a). Therefore, this is a non-final Remand Order which is not yet ripe for appellate review. Accordingly, I would dismiss this appeal and affirm the Superior Court's Order remanding the case to the PERB for a hearing on the merits of Appellant's appeal.

## VI. CONCLUSION

There is no legal issue or legal basis in this case requiring an interlocutory appeal. Therefore, no basis exists for this Court to waive the final judgment rule. Accordingly, I would dismiss this appeal for lack of jurisdiction to review a non-final order. The dismissal would be without prejudice to any party to seek relief in the Superior Court, if the party is aggrieved by a subsequent decision of the PERB, once the PERB enters a final order on the merits of Appellant's appeal.